[No. 39752-4-I. Division One. December 14, 1998.]

MYRTLE HUFF, *Respondent*, v. JERRY J. BUDBILL, ET AL., *Petitioners*.

---

*M. Colleen Barrett*, for petitioners.
*Ronald D. Goldberg*, for respondent.

KENNEDY, C.J. — A commissioner of this court granted discretionary review of the trial court's interlocutory ruling that Myrtle Huff preserved her claim for personal injuries against defendant motorist Jerry J. Budbill by serving the Secretary of State under RCW 46.64.040, the absent motorist statute. It is undisputed that Huff exercised due diligence in attempting to serve Budbill personally. But Huff failed to show that Budbill was absent from the state on the day that substitute service was made, and the trial court ruled as a matter of law that Huff's good faith belief that Budbill was absent from the state—or her lack of such

belief—was immaterial under *Martin v. Triol*, 121 Wn.2d 135, 847 P.2d 471 (1993), notwithstanding the Supreme Court's decision in *Martin v. Meier*, 111 Wn.2d 471, 760 P.2d 925 (1988). Because the trial court correctly construed the absent motorist statute under *Triol* and *Meier*, we affirm.

## FACTS

On January 15, 1993, Myrtle Huff and Jerry Budbill were involved in a car accident in Seattle. The police were not called and no accident report was filed, but at the scene, Budbill gave Huff his home address, 258 E. Newton #3, Seattle. He also gave her his home telephone and pager numbers.

Between December 22, 1995, and January 3, 1996, a process server hired by Huff's attorneys made four unsuccessful attempts to personally serve Budbill with Huff's summons and complaint for personal injuries allegedly arising from the car accident, at the residence address that Budbill had given Huff at the scene of the accident. During that same period, the process server made fifteen unsuccessful attempts to contact Budbill by telephone and pager by calling the numbers Budbill had earlier given Huff.

On January 16, 1996, the day the statute of limitations was due to expire, Huff filed the summons and complaint in King County Superior Court. Accordingly, the limitation period was tolled for 90 days. *See* RCW 4.16.170; *Triol*, 121 Wn.2d at 149 (RCW 4.16.170 extends by 90 days the time period for satisfying the provisions of the absent motorist statute).

On March 1, 1996, Budbill filed a special notice of appearance in the lawsuit, specifically reserving the right to challenge the court's jurisdiction and service of process.

On March 26, 1996, the process server made another attempt to personally serve Budbill at the apartment address Budbill had given Huff. Nobody answered the door, but the process server found Budbill's name on the mailbox. The

process server also contacted a neighbor, who did not know who lived in Apartment #3. On March 27, 1996, another attempt was made. Again, no one answered the door, but the process server found an "attempt to deliver package" notice in the mailbox bearing Budbill's name. On March 30, 1996, another attempt was made. This time, the process server found two "pick up mail" notices in the mailbox. On March 31, 1996, yet another unsuccessful effort was made. Nobody answered the door. The last attempt to serve Budbill was made on April 1, 1996. Again, no one answered the door. During this same period, more than ten telephone and pager messages were left for Budbill, who never responded.

The process server also attempted, without success, to contact the owner of Budbill's apartment building. Upon inquiry, the post office reported that Budbill had: "Moved, left no forwarding address." Clerk's Papers at 59. The process server attempted to find another address for Budbill through the Department of Motor Vehicles, Directory Assistance, and the King County Assessor's office, without success.

Finally, Huff's attorneys served the Secretary of State on April 15, 1996, the 90th day following the filing of the complaint. Her attorneys also filed a due diligence declaration with the Secretary of State, paid the requisite fee, and mailed notice of service on the Secretary of State and a copy of the summons and complaint to Budbill at his last known address by registered mail, return receipt requested, all as required by RCW 46.64.040. The registered mailing was eventually returned to Huff's attorneys marked by the Post Office: "Unclaimed." Clerk's Papers at 60.

On June 26, 1996, Budbill moved for summary judgment dismissing the lawsuit, contending that he was not properly served within the statutory time limit. In support of this motion, Budbill signed declarations stating that he resided at 258 E. Newton #3, had lived there for the past six years, had never received any telephone or pager messages from anyone identifying himself as a process server trying to

serve legal papers, and had not been out of state between December 22, 1995, and April 15, 1996.[1]

The trial court denied Budbill's motion for summary judgment, and granted Huff's ensuing motion for clarification, ruling as a matter of law that no genuine issue of material fact remained with respect to the validity of the substituted service on the Secretary of State. Budbill's request for discretionary review followed.

## DECISION

The absent motorist statute provides in relevant part:

[E]ach resident of this state who, while operating a motor vehicle on the public highways of this state, is involved in any accident, collision or liability *and thereafter within three years departs from this state* appoints the secretary of state of the state of Washington as his or her lawful attorney for service of summons as provided in this section for nonresidents. Service of such summons or process shall be made by leaving two copies thereof with a fee established by the secretary of state by rule with the secretary of state of the state of Washington, or at the secretary of state's office, and such service shall be sufficient and valid personal service upon said resident or nonresident: *Provided*, That notice of such service and a copy of the summons or process *is* forthwith sent by registered mail with return receipt requested, by plaintiff to the defendant at the last known address of the said defendant, and the plaintiff's affidavit of compliance herewith are appended to the process, together with the affidavit of the plaintiff's attorney that the attorney has with due diligence attempted to serve personal process upon the defendant at all addresses known to him or

---

[1]The facts above enumerated are undisputed. The record reflects the following disputed issues of fact: Whether a padlock was found on Budbill's apartment door on or about April 1, 1996, as reported by the process server; whether the claims adjuster for Budbill's insurance carrier told Huff's attorney that he, the claims adjuster, was unable to locate Budbill. Like the trial court, we do not deem these disputed facts to be material to the outcome of the case. Budbill contended below that Huff was not duly diligent in attempting to effect personal service. But during oral argument for this appeal, Budbill conceded, through counsel, that Huff did exercise the due diligence required by the statute and the case law in attempting to effectuate personal service. We accept this concession, in that it is supported by the record and by the controlling cases, *Meier* and *Triol, supra*.

her of defendant, and further listing in his or her affidavit the addresses at which he or she attempted to have process served.

RCW 46.64.040 (emphasis added in part).

In *Martin v. Meier*, the Supreme Court ruled that a plaintiff in a case arising from a motor vehicle accident may properly serve a summons and complaint according to the procedure in the absent motorist statute where the plaintiff has, with due diligence, attempted to find and serve the defendant and where the plaintiff has a good faith basis to believe the defendant has departed the state, even though the defendant may not have actually departed the state within three years of the accident. *Meier*, 111 Wn.2d at 473, 479-80. The court noted that before the 1971 amendment to the statute, either the defendant's endorsed return or postal endorsement of refusal to accept delivery of the summons and complaint, or personal service outside the state were required. But by virtue of the 1971 amendment, service on the Secretary of State is allowed after attempts with due diligence to serve the defendant, and notice of such service may be sent to the defendant's last known address by registered mail, return receipt requested. In other words, the statute no longer mandates that the defendant's endorsed receipt be received. *Id.* at 479. Thus, the court reasoned:

> By the change in the statute, we conclude that the nonresident motorist statute applies not only where plaintiff can conclusively establish that the defendant is a nonresident or resident who has departed the state, but also where there is a reasonable basis to conclude that this is the case. The 1971 amendment providing for service on the Secretary of State in some cases where plaintiff may not know where defendant is located is consonant with the State's interest in regulating the use of the highways for the protection of persons and property within the state. *This interest is not dependent on defendant's actual location.*

*Meier*, 111 Wn.2d at 479-80 (emphasis added).

In *Meier*, the defendant had never actually left the state,

although the plaintiff's lawyer mistakenly believed that he had, based on neighbors' reports that defendant had moved to California. Instead, it was the defendant's parents who had moved to California. But the court determined, based on undisputed facts in the record, that the plaintiff's lawyer had exercised due diligence under the statute in that he had made honest and reasonable efforts to locate the defendant, and that he had a basis for a good faith belief, which was reasonable under the circumstances, that the defendant had departed the state. *Meier*, 111 Wn.2d at 482. Accordingly, the service on the Secretary of State was valid. *Id.* at 483.

In rejecting the defendant's argument that the plaintiff should not be permitted to circumvent personal service statutes by waiting until nearly the end of the limitations period before making an effort to find defendant, and then be allowed to proceed under the absent motorist statute, the court said: "We stress that we are here considering the statute satisfied only where plaintiff has a good faith belief, reasonable under the circumstances, that defendant has departed the state. The statute cannot simply be used as a substitute for other service of process procedures." *Meier*, 111 Wn.2d at 480.

■■ Budbill argues that *Meier* stands for the proposition that *either* the defendant must have actually departed the state *or* the plaintiff must have a good faith belief, reasonable under the circumstances, that defendant has departed the state, and that if neither of these circumstances exist, the absent motorist statute simply does not apply. If *Meier* were the Supreme Court's most recent pronouncement on the matter, we might well agree with Budbill. But in *Martin v. Triol*, 121 Wn.2d 135, 847 P.2d 471 (1993), the court applied the test in *Meier* in such manner as to persuade both the trial court and this court in this instant matter that *Meier* cannot be so narrowly construed. Moreover, in its most recent pronouncement on the meaning of *Meier*, the court, in the course of describing its policy of applying liberal construction to substitute ser-

vice of process statutes in order to effectuate the purpose of the statute while adhering to its spirit and intent, said with respect to *Meier*:

> [I]n *Martin v. Meier,* 111 Wn.2d 471, 760 P.2d 925 (1988) the issue was whether a defendant was properly served under the motorist statute. Such service is statutorily permitted only when the defendant "departs from this state." RCW 46.64.040. The defendant in *Martin* had not left the state although plaintiff was unable to locate him. This court liberally construed the term and upheld the sufficiency of service of process. In doing so, the term "departs" was interpreted by looking at the underlying purpose of the motorist statute, which is to provide a method for serving motorists who cannot be found in the State.

*Sheldon v. Fettig,* 129 Wn.2d 601, 607, 919 P.2d 1209 (1996).

Thus, it would appear that the dispositive factor in every absent motorist case may not be whether the defendant has actually departed the state or, as the sole alternative, whether the plaintiff has a good faith belief, reasonable under the circumstances, that the defendant has departed the state. Rather, the dispositive factor may be the plaintiff's inability to find and serve the resident motorist defendant notwithstanding the good faith exercise of due diligence in attempting to find and serve the defendant. We agree with the trial court in the instant matter that *Triol* stands for the latter proposition.[2] Moreover, even if we and the trial court have misconstrued *Triol*, the policy of liberal construction of this substitute service of process statute in order to effectuate the purpose of the statute while adhering to its spirit and intent requires that we construe the statutory term "departs from this state" "by looking at the underlying purpose of the motorist statute, which is to provide a method for serving motorists who cannot be found in the State," as described by the Supreme Court in *Sheldon,* 129 Wn.2d at 607.

---

[2]*But see Carras v. Johnson,* 77 Wn. App. 588, 592, 892 P.2d 780 (1995), wherein the court said: "Although the defendants in *Triol* were residents of Washington, the court concluded RCW 46.64.040 was applicable because the defendants had left the state."

In *Triol*, as in the instant matter, the plaintiffs made a diligent effort to find and serve the defendants at their residential address in Seattle before the running of the statute of limitations. But the defendants were on vacation, sailing in the Canadian waters. On the day that the plaintiff served the Secretary of State, which was the 90th day following the filing of the complaint, the defendants were still in the Canadian waters; thus, they had actually departed the state and remained absent on the day that service was made on the Secretary of State. But the plaintiff had no way of knowing this. In fact, the plaintiff knew only that the defendants were not at home and had not been at home during the five-day effort to serve them before the expiration of the statute of limitation, and that the neighbors did not know the defendants' whereabouts.

In this court's treatment of *Triol*, *see Martin v. Triol*, 63 Wn. App. 862, 822 P.2d 342 (1992), *aff'd in part, rev'd in part*, 121 Wn.2d 135, 847 P.2d 471 (1993), we observed that the trial court had not entered findings with respect to whether the plaintiff had exercised the good faith and due diligence requirements of *Meier*: "These determinations are factual questions. . . . Accordingly, we reverse the trial court and remand for a factual determination of whether the [plaintiff] acted in good faith and exercised due diligence." 63 Wn. App. at 867 (citations to *Meier* and other authorities omitted). But the Supreme Court reversed this portion of our decision, in that the record was sufficiently developed to allow it to determine as a matter of law

> and in accordance with the test announced in *Meier* that [plaintiff] acted in good faith and exercised due diligence in attempting to find [defendants] and serve process on them prior to substituting service on the Secretary of State. We thus set aside the order of the Court of Appeals remanding the case to the trial court for findings of fact on good faith and due diligence.

121 Wn.2d at 150-51.

Thus, neither this court nor the Supreme Court deemed

it dispositive of the good faith requirement set down in *Meier* that the defendants in *Triol* were actually out of state on the day that the Secretary of State was served. And neither court deemed it dispositive of the good faith requirement that the plaintiff's attorney in *Triol* could not possibly have had a reasonable basis upon which to form a good faith belief that the defendants were out of state, when all that was known was that they were not at home during the five-day effort to serve them before the expiration of the statute of limitation and that the neighbors did not know their whereabouts. Thus, we conclude, as did the trial court, that *Triol* does not turn on the fact that the defendants in that case were actually out of state when the Secretary of State was served, and that *Meier* does not stand for the narrow proposition that, in every case, the plaintiff must establish either that the motorist defendant was actually out of state or, in the sole alternative, that plaintiff's attorney had a reasonable basis for a good faith belief that the defendant was out of state.

Instead, we apply the principles of liberal construction to the absent motorist statute and, construing *Meier* and *Triol* together, conclude that the spirit and intent of the absent motorist statute, as amended in 1971, requires that the statutory term "departs from this state" as used in RCW 46.64.040 be interpreted in accord with the underlying purpose of the statute, which is, as the Supreme Court noted in *Sheldon*, 129 Wn.2d at 607, "to provide a method for serving motorists who cannot be found in the State" despite the exercise of good faith and due diligence on the part of the plaintiff. As succinctly stated in *Meier*: "This interest is not dependent on defendant's actual location." 111 Wn.2d at 480.

■ ■ In so ruling, we reject Budbill's contention that the trial court effectively rewrote the absent motorist statute so as to render the words "departs from this state" superfluous. Instead, the trial court liberally construed the statute in accord with the Supreme Court's directive in *Triol*: "In construing statutes, the spirit and intent of the

statute should prevail over the literal letter of the law and there should be made that interpretation which best advances the perceived legislative purpose." 121 Wn.2d at 143 (internal quotation marks and footnote containing citation omitted).

It is undisputed that Huff strictly complied with the procedural requirements of the absent motorist statute, including the requirement of due diligence in attempting to locate and serve Budbill. *See Triol*, 121 Wn.2d at 144 (substituted service statutes require strict procedural compliance). Moreover, the record is sufficiently developed that we can and do conclude as a matter of law that Huff did strictly comply with those procedural requirements. *See Triol*, 121 Wn.2d at 151. Accordingly, we affirm the trial court, and hold as a matter of law that no genuine material issues of fact remain with respect to the validity of the service upon the Secretary of State. In sum, such service was valid in this case.

GROSSE and BECKER, JJ., concur.

Review granted at 137 Wn.2d 1032 (1999).