[No. 67619-4.   En Banc.]
Argued October 26, 1999.     Decided June 8, 2000.

MYRTLE HUFF, *Respondent*, v. GERRY J. BUDBILL, ET AL.,
*Petitioners*.

2

*M. Colleen Barrett*; and *Edward A. Harley III*, for petitioners.

*Ronald D. Goldberg*, for respondent.

ALEXANDER, J. — We are called upon to decide whether our previous decision in *Martin v. Meier*, 111 Wn.2d 471, 760 P.2d 925 (1988), to the effect that a plaintiff must have a reasonable basis for believing a defendant has departed the state before utilizing the procedures set forth in RCW 46.64.040 as a means of effectuating substitute service of process, is still applicable. The trial court and Court of Appeals determined here, contrary to our holding in *Meier*, that it was unnecessary for the plaintiff to have a reasonable basis for believing that the defendant has departed the state before taking advantage of the aforementioned statute. We hold today that *Meier* correctly defines the requirements of the statute and, thus, before a plaintiff can invoke its provisions related to service of process, there must be a reasonable basis for believing that the defendant has departed the state. We further hold that because there are no facts in this record that provide a reasonable basis for such a belief, the plaintiff was not entitled to use the statute to effectuate service of process. We, therefore, reverse the Court of Appeals.

## I. FACTS

On January 15, 1993, Myrtle Huff and Gerry Budbill were involved in an automobile accident in Seattle. The police were not summoned to the scene and an accident report was not filed. Budbill did, however, provide Huff with the address of his apartment as well as his telephone and pager numbers. Sometime thereafter, an attorney hired by Huff prepared a summons and complaint in which Huff alleged that Budbill's negligence caused the accident and resulting injury to her. Between December 22, 1995, and January 3, 1996, a process server hired by Huff's attorney made four unsuccessful attempts to serve Budbill with the

4

summons and complaint at the address Budbill gave to Huff on the date of the accident. Two of those attempts took place in the morning hours and two were undertaken in the evening. The process server indicated that, in addition, "[f]ifteen separate attempts were made to contact Jerry [sic] J. Budbill by telephone during this two week period." Clerk's Papers (CP) at 8. The process server said that Budbill did not respond to any of the telephone messages.[1] Budbill denies having received any of the messages.

On January 16, 1996, the day the statute of limitations would have presumably extinguished Huff's cause of action against Budbill, Huff filed the summons and complaint in the King County Superior Court. This had the effect of tolling the statute of limitations for an additional 90 days.[2] On March 1, 1996, Budbill's attorney filed a notice of appearance "without waiving respondents' right to challenge the court's jurisdiction and service of process." CP at 5. Huff's process server then made five additional attempts to serve the summons and complaint on Budbill at the address that was given to Huff. The first of these attempts occurred on March 26, 1996, at 3:05 p.m. During this attempt, the process server spoke with the tenant in the apartment adjacent to the apartment where the process server had been attempting to serve Budbill. The tenant indicated that he was unaware of who lived in the adjacent apartment. The process server noticed that the mailbox associated with that apartment contained mail addressed to Budbill. At 2:50 p.m. on the following day, the process server made another attempt to serve Budbill, but with no

---

[1] The record is silent as to whether the process server left a message after each telephone call.

[2] RCW 4.16.170 states, in pertinent part, "[f]or the purpose of tolling any statute of limitations an action shall be deemed commenced when the complaint is filed or summons is served whichever occurs first. If service has not been had on the defendant prior to the filing of the complaint, the plaintiff shall cause one or more of the defendants to be served personally, or commence service by publication within ninety days from the date of filing the complaint." See also Martin v. Triol, 121 Wn.2d 135, 151-52, 847 P.2d 471 (1993) (holding that "RCW 4.16.170 extends for 90 days the time in which parties may use the procedures under RCW 46.64.040 for substituted service of process").

success. On this occasion, the process server peered into the mailbox associated with the apartment and found an " 'attempt to deliver package' " addressed to Budbill. CP at 8. On March 30, 1996, at 9:40 a.m., the process server was again unsuccessful in serving Budbill at the same location. He once more examined the contents of the mailbox and discovered two " 'pick up mail' " notices. CP at 8. On March 31, 1996, at 2:30 p.m., the process server made yet another unsuccessful attempt to personally serve Budbill at the address Huff had been given. The process server made his final attempt to serve Budbill on April 1, 1996, at 9:30 a.m. As before, he was unable to effect personal service. According to the process server, "[f]rom March 25, 1996 through April 1, 1996 over 10 telephone and pager messages were left for Jerry [sic] J. Budbill." CP at 40. The process server also stated that "[n]one of these messages were ever returned." CP at 40. Budbill avers that he "never received any telephone calls or voice mail messages from any person stating that he or she was attempting to serve me with legal papers." CP at 84.

Huff's process server contacted the Department of Licensing (DOL), Directory Assistance, and the King County Assessor's office in an effort to unearth information about where Budbill was located. He was, however, unsuccessful in obtaining any information regarding Budbill's whereabouts.[3] On April 9, 1996, the process server completed a " 'request for change of address or box holder information needed for service of legal process' " at the United States Post Office, but discovered that Budbill had not filed a change of address form. CP at 59. On April 15, 1996, the 19th day following the filing of the summons and complaint, Huff's attorney utilized the substitute service procedures set forth in the so-called nonresident motorist statute, RCW 46.64.040, and served the summons and complaint on the

---

[3] The record is silent as to what type of search was undertaken at either the DOL or Directory Assistance. The search at the assessor's office indicated that Bruce A. Furrer owned the apartment building where Budbill claimed to live. According to the process server's affidavit, "[a]ll attempts on behalf of the courier to contact BRUCE A. FURRER were unsuccessful." CP at 8.

secretary of state in Olympia. As dictated by the aforementioned statute, Huff's attorney filed a "due diligence" declaration with the secretary of state which stated, in part, that it was the attorney's belief that Budbill was "presently outside the State of Washington, location unknown." CP at 32. Huff's attorney also sent a copy of the summons and complaint to Budbill, via registered mail, at the address Budbill had given to Huff. The registered mail eventually was returned to Huff's attorney on May 8, 1996, as "unclaimed." CP at 60.

## II. PROCEEDINGS BELOW

Budbill moved for summary judgment dismissing the lawsuit. He argued that RCW 46.64.040 could not be used as a means to serve him with process because he had not departed the state and Huff was without a good faith belief, reasonable under the circumstances, that Budbill had done so. In support of this argument Budbill stated that he has resided "at 258 E. Newton #3, Seattle Washington . . . for over six years." CP at 29. He also noted that "[f]rom December 22, 1995 to April 1, 1996, I was continuously working at DaVinci's Restaurant in Kirkland." CP at 84. Budbill additionally asserted that "I receive all of my mail at my apartment" and that "I have been a registered Washington state voter for over nine years," and have "had a Washington state driver's license for over ten years." CP at 29.

The trial court denied Budbill's motion, concluding that there were genuine issues of material fact about whether Huff had exercised due diligence in locating Budbill and whether Huff had a good faith belief Budbill had departed the state. The plaintiff moved for "clarification" of the denial of summary judgment. In granting this motion, the trial court explained that it initially believed there were material issues of fact, but concluded, after reviewing RCW 46.64.040 and this court's decisions in *Martin v. Triol*, 121 Wn.2d 135, 847 P.2d 471 (1993), and *Martin v. Meier*, 111

Wn.2d 471, 760 P.2d 925 (1988), that it was proper for Huff to utilize the substitute service provisions of RCW 46.64.040 as a means of serving Budbill with process.

After granting discretionary review, Division One of the Court of Appeals affirmed the trial court's rulings. It held that because Huff exercised due diligence in attempting to locate Budbill, she was entitled to use the nonresident motorist statute in order to obtain substitute service of process. *Huff v. Budbill*, 93 Wn. App. 258, 268, 969 P.2d 1085 (1998), *review granted*, 137 Wn.2d 1032, 980 P.2d 1283 (1999). We granted Budbill's petition for review.

## III. DISCUSSION

Budbill asserts that the trial court erred in two respects. He contends that it wrongly denied his motion for summary judgment and incorrectly granted Huff's motion for clarification. In reviewing the order granting Huff's motion, we consider it equivalent to an order granting summary judgment on the issue of service of process. Although it was not denominated as such, the trial judge did determine that there were no issues of material fact and that service of the summons and complaint pursuant to the nonresident motorist statute was valid.[4]

In reviewing a grant of summary judgment, we engage in the same inquiry as the trial court. RAP 9.12; *Harris v. Ski Park Farms, Inc.*, 120 Wn.2d 727, 737, 844 P.2d 1006 (1993). A summary judgment will be affirmed if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* CR 56(c); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). All facts and reasonable inferences are reviewed in the light most favorable to the nonmoving party, and all questions of law are reviewed de novo. *Wilson*, 98 Wn.2d at 437. An appellate court's review of a trial court's interpre-

---

[4] The trial court's order of clarification indicated that there were "no genuine issues of material fact in this matter regarding service of summons and complaint." CP at 93. The trial court amplified its decision in a letter to counsel referred to in the order.

tation of a statute is de novo. *See Department of Labor & Indus. v. Fankhauser*, 121 Wn.2d 304, 308, 849 P.2d 1209 (1993).

Budbill argues that the trial court and Court of Appeals both misinterpreted the nonresident motorist statute, and wrongly concluded that it permitted service of process on the secretary of state merely upon a showing that the plaintiff exercised "due diligence" in attempting to locate the defendant. Budbill contends that a correct analysis of the statute is that it may be utilized to effect substitute service on a defendant only in instances where the defendant has actually departed the state or where there is a reasonable basis for believing the defendant has done so. To resolve this issue we must examine RCW 46.64.040, the statute that provides for substitute service on the secretary of state in cases where a defendant is a nonresident or a resident who has departed the state. The relevant portion is as follows:

> [E]ach resident of this state who, while operating a motor vehicle on the public highways of this state, is involved in any accident, collision or liability and thereafter within three years *departs from this state* appoints the secretary of state of the state of Washington as his or her lawful attorney for service of summons as provided in this section for nonresidents . . . .
>
> PROVIDED, That notice of such service and a copy of the summons or process is forthwith sent by registered mail with return receipt requested, by plaintiff to the defendant at the last known address of the said defendant, and the plaintiff's affidavit of compliance herewith are appended to the process, together with the affidavit of the plaintiff's attorney that the attorney has with due diligence attempted to serve personal process upon the defendant at all addresses known to him or her of defendant and further listing in his or her affidavit the addresses at which he or she attempted to have process served.

RCW 46.64.040 (emphasis added).

Budbill correctly observes that in *Meier*, this court considered this statute and concluded that it authorized substitute service on the secretary of state in cases "where the

plaintiff has a good faith belief that defendant has departed the state and has with due diligence attempted to find and serve defendant." *Meier*, 111 Wn.2d at 480. An amendment to the statute provided the key rationale for our decision. We explained that

> prior to the 1971 amendment defendant's endorsed return or postal endorsement of refusal to accept delivery of the summons and complaint, or personal service outside the state were required by the statute. In either case plaintiff's attorney necessarily knew where defendant resided, and knew that that residence was out of the state.

*Meier*, 111 Wn.2d at 479. We went on to observe that the current version of the statute provides for service on the secretary of state "after attempts made with due diligence to serve defendant, and allows notice of service to be sent to the defendant's last known address return receipt requested." *Meier*, 111 Wn.2d at 479. Because of this change in the text of the statute, we concluded that it had application not only in instances where the plaintiff conclusively establishes that the defendant is a nonresident or a resident who has departed Washington, but also "where there is a reasonable basis to conclude that this is the case." *Meier*, 111 Wn.2d at 479.

In rejecting Budbill's argument and ruling for Huff, the Court of Appeals determined that this court's more recent pronouncements regarding the nonresident motorist statute indicated an even broader view of the statute than we had announced in *Meier* and suggested that it could be utilized in instances when a defendant simply "cannot be found in the State." *Huff*, 93 Wn. App. at 265 (quoting *Sheldon v. Fettig*, 129 Wn.2d 601, 607, 919 P.2d 1209 (1996)). It said, "[i]f *Meier* were the Supreme Court's most recent pronouncement on the matter, we might well agree with Budbill. But in *Martin v. Triol*, 121 Wn.2d 135, 847 P.2d 471 (1993), the court applied the test in *Meier* in such manner as to persuade both the trial court and this court in this instant matter that *Meier* cannot be so narrowly construed." *Huff*, 93 Wn. App. at 264. Reading *Triol* in

conjunction with another case from this court, *Sheldon v. Fettig*, 129 Wn.2d 601, 919 P.2d 1209, the Court of Appeals held that:

> the dispositive factor in every absent motorist case may not be whether the defendant has actually departed the state or, as the sole alternative, whether the plaintiff has a good faith belief, reasonable under the circumstances, that the defendant has departed the state. Rather, *the dispositive factor may be the plaintiff's inability to find and serve the resident motorist defendant notwithstanding the good faith exercise of due diligence in attempting to find and serve the defendant.*

*Huff*, 93 Wn. App. at 265 (emphasis added).

Budbill argues here, as he did below, that this court did not do away with the requirement we set forth in *Meier* to the effect that a plaintiff must have a good faith belief, reasonable under the circumstances, that a defendant has departed the state before the statute in question can be used as a means of effectuating service of process on the defendant. In addressing this contention, we must, of course, examine the *Fettig* and *Triol* decisions that the Court of Appeals relied on in reaching its conclusion that this court had adopted a broader construction of the statute than we had in *Meier*.

In *Fettig*, the issue before this court was whether a summons and complaint had been left at a defendant's "house of usual abode" under RCW 4.28.080(15). *Fettig*, 129 Wn.2d at 603. We noted there that "more recently we have applied liberal construction to substitute service of process statutes in order to effectuate the purpose of the statute while adhering to its spirit and intent." *Fettig*, 129 Wn.2d at 607. As an example of such a liberal construction we cited our decision in *Meier* and provided this fleeting commentary:

> [I]n *Martin v. Meier*, 111 Wn.2d 471, 760 P.2d 925 (1988) the issue was whether a defendant was properly served under the motorist statute. Such service is statutorily permitted only when the defendant "departs from this state." RCW 46.64.040. The defendant in *Martin* had not left the state although

plaintiff was unable to locate him. This court liberally construed the term and upheld the sufficiency of service of process. In doing so, the term "departs" was interpreted by looking at the underlying purpose of the motorist statute, which is to provide a method for serving motorists who cannot be found in the State.

*Fettig*, 129 Wn.2d at 607. In reaching the decision it did here, the Court of Appeals determined that the above-quoted language from *Fettig* supported a conclusion that the key factor in absent motorist cases is not whether the defendant has actually departed the state or whether the plaintiff has a good faith belief, reasonable under the circumstances, that the defendant has so departed. It determined, rather, that "the dispositive factor may be the plaintiff's inability to find and serve the . . . defendant notwithstanding the good faith exercise of due diligence in attempting to find and serve the defendant." *Huff*, 93 Wn. App. at 265. *Fettig* does not support such a conclusion. We say that because in *Fettig* we were not altering our previous pronouncement regarding the meaning of the statutory language "departs from this state." Rather, as noted above, we were merely invoking *Meier* as illustrative of the fact that substitute service statutes have recently been liberally construed.

While it is true, as the Court of Appeals noted, that we observed in *Fettig* that the phrase "departs from this state" had previously been construed to provide a method for serving a defendant "who cannot be found in the State," *Fettig*, 129 Wn.2d at 607, this does not mean that the phrase "departs from this state" is synonymous with the words "cannot be found in this state." To reach such a conclusion one would need to read this language from *Fettig* in a vacuum, rather than in conjunction with *Meier*, the case that established the analytical framework for when the nonresident motorist statute can be used to serve a defendant who cannot be located in the state.

■■ When *Fettig* is read against the backdrop of *Meier* it is clear that the requirement that the plaintiff show that

the defendant departed this state is satisfied only if the defendant has, indeed, departed or if the plaintiff has a "good faith belief" that such is the case. We did not intend to convey an invitation to plaintiffs to invoke the nonresident motorist statute as a means of effectuating substitute service in every case where the plaintiff simply cannot locate the defendant. Quite to the contrary, we cautioned in *Meier* that "we are here considering the statute satisfied *only* where plaintiff has a good faith belief, reasonable under the circumstances, that defendant has departed the state. The statute cannot simply be used as a substitute for other service of process procedures." *Meier*, 111 Wn.2d at 480 (emphasis added). Nothing in *Fettig* was intended to alter this clear pronouncement.

Likewise, this court's decision in *Triol* does not support a plaintiff's right to invoke the nonresident motorist statute upon a mere showing that the plaintiff has been unable to locate the defendant. There, the plaintiffs attempted to personally serve process on the defendants within this state but were unsuccessful in that effort. Thereafter, they served the secretary of state pursuant to the procedures in RCW 46.64.040. Unknown to the plaintiffs, the defendants were boating in Canada at the time the secretary of state was served with process. The defendants objected to service under the nonresident motorist statute arguing that the plaintiffs failed to fulfill the statutory requirement of first exercising due diligence before serving the secretary of state. On this issue, we determined:

> Findings of fact are appropriately made in the trial court. Here, however, the facts are not in issue. Rather, the "principal dispute relates to the meaning of [a] statutory term" and may be resolved by this court. The record is sufficiently developed in this case for this court to determine, as a matter of law and *in accordance with the test announced in Meier*, that Respondents *acted in good faith* and exercised due diligence in attempting to find Petitioners and serve process on them prior to substituting service on the Secretary of State.

*Triol*, 121 Wn.2d at 151 (alteration in original; emphasis

added; footnotes omitted). It is this above excerpt that the Court of Appeals seized on as an indication that the requirement that there be a "good faith belief" that the defendant has departed the state before service is allowed under RCW 46.64.040 is met so long as the plaintiff "acts in good faith" and uses "due diligence" in attempting to locate the defendant. *Huff*, 93 Wn. App. at 264.

*Triol* cannot be read as abolishing the requirement we set forth in *Meier* that there must be a good faith belief that the defendant has departed the state. In *Triol* we were dealing with a different aspect of the nonresident motorist statute than we were in *Meier*. As discussed above, we were faced, in *Meier*, with the threshold question of determining when a plaintiff has the option of using the nonresident motorist statute as a means of serving the defendant. In that case, we set forth the factual prerequisites that must exist in order for a plaintiff to invoke the statute, namely, that the defendant must have departed the state or that the plaintiff must have a good faith belief that this is the case.

By contrast, in *Triol* we were not dealing with the question as to whether the plaintiffs had the option of invoking the nonresident motorist statute as a means of serving the defendants. Indeed, it was clear to us that the plaintiffs could use the statute to effectuate service of process because the defendants were outside the state of Washington. There was no need, therefore, for us to engage in any discussion of the good faith belief requirement that we formulated in *Meier*. Instead, we were addressing the issue of whether the plaintiffs acted with "due diligence" in attempting to locate the defendants prior to serving the secretary.

Rather than contradicting our decision in *Meier*, we are satisfied the above-quoted language from *Triol* is completely consistent with it. The "in accordance with the test announced in *Meier*" language does not refer to the "good faith belief" test announced in *Meier*. Instead, this language in *Triol* refers to the "due diligence" test that was *also*

announced in *Meier*.[5] *See Meier*, 111 Wn.2d at 482; *see also Carras v. Johnson*, 77 Wn. App. 588, 592, 892 P.2d 780, 783 (1995) (observing that *Triol* was "[r]elying on the definition of due diligence set out in *Meier*"). Since the issue in *Triol* was whether the plaintiffs actually exercised "due diligence" as required by the statute, *Triol* needed to refer to the definition of "due diligence" to make that determination. Hence, the "in accordance with the test announced in *Meier*" language simply makes reference to the statutory meaning of "due diligence" as defined in *Meier*, not the meaning of "good faith belief" that was also defined in *Meier*.

If neither *Fettig* nor *Triol* can be read as altering the "good faith belief" requirement of *Meier*, it surely follows that the combination of the two does not make such an alteration. Accordingly, we reaffirm our earlier decision in *Meier* and hold that a plaintiff may use RCW 46.64.040, the nonresident motorist statute, as a means of serving the defendant only if (1) the defendant has departed the state, or (2) the plaintiff has a good faith belief the defendant has departed and has exercised due diligence in attempting to locate the defendant.

In applying the statute to the undisputed facts of this case, we must ask whether Huff satisfied the statutory requirements. Because there has been no showing that Budbill had departed the state, the dispositive issue is whether Huff "ha[d] a good faith belief that defendant has departed the state and has with due diligence attempted to find and serve defendant." *Meier*, 111 Wn.2d at 480. Because Budbill's counsel essentially conceded that Huff exercised due diligence in attempting to find and serve

---

[5] "We hold that 'due diligence' under the statute requires that plaintiff make honest and reasonable efforts to locate the defendant. Not all conceivable means need be employed, but, at the least, the accident report, if made, must be examined and the information therein investigated with reasonable effort. In addition, if plaintiff has information available pertaining to defendant's whereabouts other than that contained in the accident report, plaintiff must make reasonable efforts to investigate based on that information as well." *Meier*, 111 Wn.2d at 482.

Budbill,[6] the narrower issue for resolution is whether under the totality of the circumstances, Huff reasonably had a "good faith belief" that Budbill had departed the state. Whether a plaintiff has a good faith belief that the defendant has departed the state is a question of fact. *Meier*, 111 Wn.2d at 482.

In this case, the material facts are undisputed.[7] The question, thus, is whether they justify a conclusion that Huff had a reasonable good faith belief that Budbill departed the state. In reviewing the order granting Huff's motion, it is necessary for us to view the undisputed facts in the light most favorable to Budbill. *See Enterprise Leasing, Inc. v. City of Tacoma*, 139 Wn.2d 546, 551-52, 988 P.2d 961 (1999). Viewing the facts in that manner, we conclude as a matter of law that Huff could not have reasonably formed a "good faith belief" that Budbill had departed the state.

We reach this conclusion because there are simply no facts that could lead a reasonable person to believe, in good faith, that Budbill had departed the state of Washington. While it is true that between December 22, 1995, and April 1, 1996, Huff's process server made numerous attempts to serve Budbill and determine his whereabouts, the fact that

---

[6] Budbill's attorney conceded during oral argument at the Court of Appeals that "Huff did exercise the due diligence required by the statute and the case law in attempting to effectuate personal service." *Huff*, 93 Wn. App. at 262 n.1.

[7] There are four disputed facts that are not material to the issue of whether Huff had a good faith belief Budbill had departed the state: (a) The plaintiff states that on April 1, 1996, a padlock was on the door to apartment # 3, Budbill's dwelling unit. The defendant refuted this by producing an affidavit of the property manager stating that there was never a padlock on apartment # 3, however, a padlock was placed on apartment # 1 from December 1995 through May 1996; (b) A declaration from Huff's attorney stated that on February 20, 1996, an insurance adjuster from Budbill's insurer contacted the plaintiff's attorney. Apparently, the adjuster told Huff's attorney that he was unable to contact Budbill. The defendant produced an affidavit from the adjuster which stated that the insurer had "never experienced any problems contacting its insured." CP at 75; (c) The process server stated that he left over 25 telephone messages for Budbill, however, Budbill disputes having received any of them; and (d) The process server stated that two "pick up mail" notices were found in Budbill's mailbox, yet Budbill claims he receives all of his mail at his apartment. Although these disputed facts may call into question whether Budbill actually resided at the apartment at the time material to this case, they shed little light on the central issue of whether there was a factual basis for a good faith belief that Budbill departed the state.

he was unsuccessful in that effort does not logically lead to the conclusion that Budbill had departed Washington. While the inability of the process server to find Budbill may suggest that Budbill was not home at the times the process server visited the apartment or that the address that Budbill had given to Huff was no longer his residence, it would require, as Budbill asserts, a " 'quantum leap' in logic" to conclude in good faith that Budbill had departed the state. Mot. for Discretionary Review at 12.

The facts here may be contrasted to those of *Meier*. There a neighbor of the defendant informed the process server, albeit incorrectly, that the defendant had moved to California. Moreover, the plaintiff was aware that the defendant had been a student at Western Washington University at the time the accident occurred giving rise to the lawsuit. When, in an effort to determine the defendant's whereabouts, the plaintiff's investigator called the university to inquire if the defendant was still a student, she was told that he was no longer enrolled at that institution. After noting that it is common for students to leave the state "as students frequently do during vacations, terms they take off from studies, or upon completion of their studies," we concluded that the "[p]laintiff had a reasonable basis for a good faith belief that defendant had departed the state." *Meier*, 111 Wn.2d at 482.

Here, as noted above, there is nothing in the record to suggest that Budbill had actually departed this state. Although we do not mean to suggest that a plaintiff must always be furnished with information that directly indicates that a defendant has departed the state before the procedures in RCW 46.64.040 may be utilized, a plaintiff must have more information than what was known to the plaintiff here before it can be said that the plaintiff possesses a "good faith belief" that the defendant is absent from the state.

## IV. CONCLUSION

The nonresident motorist statute may be utilized to

effectuate service of process on a putative defendant only if that person has departed the state or the plaintiff has a reasonable basis for believing that this is the case. In viewing the evidence in the light most favorable to Budbill insofar as Huff's motion is concerned, and in the light most favorable to Huff insofar as Budbill's motion is concerned, we conclude as a matter of law that Huff did not have a good faith belief that Budbill had departed the state. We, therefore, reverse the Court of Appeals' decision affirming the order granting Huff's motion for clarification and remand to the trial court for entry of an order granting Budbill's motion for summary judgment.

GUY, C.J., SMITH, JOHNSON, MADSEN, TALMADGE, and SANDERS, JJ., and BROWN, J. Pro Tem., concur.

IRELAND, J. (dissenting) — The majority decision imposes a strict construction of the absent motorist statute (RCW 46.64.040) after two of our recent decisions have applied the appropriate liberal construction to the statute. In so deciding, the majority works a "whiplash" on our jurisprudence of process service in motor vehicle cases.

The majority correctly concludes that the plaintiff failed to demonstrate a good faith belief that the defendant had moved from the state. The majority distinguishes this case from *Martin v. Meier*, 111 Wn.2d 471, 760 P.2d 925 (1988), which allowed service under RCW 46.64.040 because the plaintiff had a good faith (albeit wrong) belief that the defendant had departed the state based on a statement by a former neighbor. Likewise, such service was allowed in *Martin v. Triol*, 121 Wn.2d 135, 847 P.2d 471 (1993), where the plaintiff had no good faith belief that the plaintiff had departed the state, but the plaintiff *just happened to be* on vacation out of state when the service was attempted.

I agree with the Court of Appeals when it stated:

[W]e apply the principles of liberal construction to the absent motorist statute and, construing *Meier* and *Triol* together, conclude that the spirit and intent of the absent motorist

statute, as amended in 1971, requires that the statutory term "departs from this state" as used in RCW 46.64.040 be interpreted in accord with the underlying purpose of the statute, which is, as the Supreme Court noted in *Sheldon* [*v. Fettig*], 129 Wn.2d [601,] 607[, 919 P.2d 1209 (1996)], "to provide a method for serving motorists who cannot be found in the State" despite the exercise of good faith and due diligence on the part of the plaintiff. As succinctly stated in *Meier*: "This interest is not dependent on defendant's actual location." 111 Wn.2d at 480.

In so ruling, we reject Budbill's contention that the trial court effectively rewrote the absent motorist statute so as to render the words "departs from this state" superfluous. Instead, the trial court liberally construed the statute in accord with the Supreme Court's directive in *Triol*: "In construing statutes, the spirit and intent of the statute should prevail over the literal letter of the law and there should be made that interpretation which best advances the perceived legislative purpose." 121 Wn.2d at 143.

*Huff v. Budbill*, 93 Wn. App. 258, 267-68, 969 P.2d 1085 (1998), *review granted*, 137 Wn.2d 1032, 980 P.2d 1283 (1999).

What the plaintiff did prove in this case is that she had a reasonable belief that the defendant was avoiding service of process. The plaintiff is not without remedy in such circumstances. The plaintiff could have served the summons upon the defendant by publication under RCW 4.28.100 which, unlike the absent motorist statute, has an explicit provision for those believed to be avoiding service. To now say, after the statute of limitations has run, that the plaintiff should have used service of summons by publication exacts perfect hindsight from the plaintiff that this court would suddenly adopt strict construction of the absent motorist statute which had been previously liberally construed.

Moreover, the Court of Appeals' interpretation is identical to the understanding reflected in another decision of this court, where we said:

[I]n *Martin v. Meier*, 111 Wn.2d 471, 760 P.2d 925 (1988) the issue was whether a defendant was properly served under the motorist statute. Such service is statutorily permitted only

when the defendant "departs from this state." RCW 46.64.040. The defendant in *Martin* [*v. Meier*, 111 Wn.2d 471, 760 P.2d 925 (1988)] had not left the state although plaintiff was unable to locate him. This court liberally construed the term and upheld the sufficiency of service of process. In doing so, the term "departs" was interpreted by looking at the underlying purpose of the motorist statute, which is to provide a method for serving motorists who cannot be found in the State.

*Sheldon v. Fettig*, 129 Wn.2d 601, 607, 919 P.2d 1209 (1996).

The majority attempts to distinguish *Fettig* and claims its reference to *Meier* was only "fleeting." In actuality, the majority simply contradicts *Fettig*. The Court of Appeals' liberal construction of the absent motorist statute is the correct construction based on our own precedent. "A statute, when interpreted by the court, speaks according to the judicial interpretation given it." *Cecchi v. Bosa*, 186 Wash. 205, 209, 57 P.2d 1064 (1936).

Especially in recent years, the legislature has enacted strict laws to ensure the accountability and availability of motorists who use our roads. For example, the legislative intent concerning mandatory liability insurance has been expressed as follows:

It is a privilege granted by the state to operate a motor vehicle upon the highways of this state. The legislature recognizes the threat that uninsured drivers are to the people of the state. In order to alleviate the threat posed by uninsured drivers it is the intent of the legislature to require that all persons driving vehicles registered in this state satisfy the financial responsibility requirements of this chapter.

RCW 46.30.010. In addition, Washington is a party jurisdiction to the nonresident violator compact, which includes the following finding:

In most instances, a motorist who is cited for a traffic violation in a jurisdiction other than his home jurisdiction: Must post collateral or bond to secure appearance for trial at a later date; or if unable to post collateral or bond, is taken into custody until the collateral or bond is posted; or is taken directly to court for his trial to be held.

RCW 46.23.010(a)(1).

From this recent history, the legislature evidences its intent to demand that motorists answer financially *specifically* for their motor vehicle torts (as opposed to any other torts, contracts, or other monetary judgments). There is a well-established rule that when there is both general and specific legislation on a matter, we should be guided by the specific legislation: "A specific statute will supersede a general one when both apply." *Waste Management of Seattle, Inc. v. Utilities & Transp. Comm'n*, 123 Wn.2d 621, 630, 869 P.2d 1034 (1994). Although a summons by publication can be used to bring someone who has left the state or is avoiding process within the state before the court, this is a general statute. The absent motorist statute, as the specific statute applying to motor vehicle tortfeasors, should govern here.

The absent motorist statute is specifically intended to apply when motorists use the roadways and then are not available to answer for injuries they have inflicted. It has been determined to be in the public interest for the state to require motorists—both residents and nonresidents—to answer for their conduct when they cause harm to persons and property. It would be totally incongruous to allow a person who successfully avoids service of process to escape the financial responsibility for his or her use of the roadways. The Court of Appeals should be affirmed and the case remanded for trial.