60 P.3d 99 (2002)
114 Wash.App. 579
Kimball D. CHRISTENSEN, a single man, Appellant,
v.
GRANT COUNTY HOSPITAL DISTRICT NO. 1 d/b/a Samaritan Hospital, a non-profit municipal corporation, Respondent.
No. 21045-6-III.
Court of Appeals of Washington, Division 3, Panel Five.
December 17, 2002.
*101 Michael A. Arch, Shelley M. Engquist, Foreman & Arch, Wenatchee, WA, for Appellant.
Susan W. Troppmann, Etter, McMahon, Lamberson & Clary, Spokane, WA, for Respondent.
*100 BROWN, C.J.
Grant County Hospital District No. 1, d/b/a Samaritan Hospital (Samaritan) terminated Kimball Christensen for alleged misconduct. Mr. Christensen's union, claiming unfair labor practices, sought redress for him before the Public Employee Relations Commission (PERC). PERC rejected the union's claims. The union did not seek judicial review of PERC's final decision. Mr. Christensen then filed his own tort claim against Samaritan in superior court, alleging wrongful discharge in violation of public policy. After considering Reninger v. Dep't of Corrections, 134 Wash.2d 437, 951 P.2d 782 (1998) and Smith v. Bates Technical College, 139 Wash.2d 793, 991 P.2d 1135 (2000), the trial court granted Samaritan's summary judgment motion and dismissed Mr. Christensen's claims after giving preclusive effect to the administrative proceedings. Mr. Christensen appealed.
We hold, in this issue of first impression, that Smith permits a public employee whose union fails to achieve a remedy from PERC to file a separate superior court tort claim for wrongful termination in violation of public policy. Accordingly, we reverse.

FACTS
The key facts are undisputed. Samaritan employed Mr. Christensen as a public employee paramedic in January 1996. Mr. Christensen was active in unionizing fellow employees on behalf of the International Association of EMTs and Paramedics (Union).
In January 1997, the Union filed a petition with PERC seeking to resolve representation and certification issues. In October 1997, the Union filed an unfair labor practices complaint with PERC, seeking, among other things, redress for Mr. Christensen, who allegedly had been unfairly disciplined and suspended. Before resolution of the complaint, Samaritan terminated Mr. Christensen in December 1997, alleging misconduct in the form of sexual harassment with S.H., a female. In January 1998, the Union amended its complaint before PERC, alleging Samaritan terminated Mr. Christensen "because of his participation in protected union activities." Clerk's Papers (CP) at 46. The Union requested reinstatement of Mr. Christensen "with back pay, benefits and interest" to the date of termination. CP at 47.
In March 1998, PERC conducted hearings on the Union's complaints, including Mr. Christensen's discipline and termination. Mr. Christensen relied on the Union's regional counsel.
In April 1998, the Union and Samaritan entered a written agreement (Agreement) recognizing the Union as the exclusive bargaining agent for its union members. The Agreement granted Samaritan authority to terminate employees for just cause.
In April 1999, the PERC hearing officer issued findings of fact, conclusions of law, and an order dismissing the Union's claims. Regarding Mr. Christensen, the hearing officer concluded:
The union has failed to sustain its burden of proof to establish a prima facie case that the employer's action to discharge Kimball Christiansen [sic] was substantially motivated by the exercise of rights protected by Chapter 41.56 RCW, and the employer has in any case articulated lawful reasons for its actions, related to Christiansen's [sic] inappropriate interactions with [S.H.], so that no violation of RCW 41.56.140(1) is established in regard to Christiansen [sic].
CP at 112.
The Union filed an administrative appeal in May 1999. In December 1999, a panel of PERC commissioners affirmed the hearing officer's order. The Union did not seek judicial review of PERC's decision and order.
In January 1998, with the aid of Union counsel, Mr. Christensen applied successfully *102 to the Employment Security Department (ESD) for unemployment benefits. Samaritan appealed the award of benefits arguing Mr. Christensen was ineligible because of misconduct. An Administrative Law Judge (ALJ) affirmed the award, concluding in part that Samaritan had failed to establish by a preponderance of the evidence that employee misconduct had occurred. Samaritan unsuccessfully appealed the ALJ's decision and order to the ESD Commission.
In November 2000, Mr. Christensen filed a complaint against Samaritan with the Grant County Superior Court. The complaint alleged retaliatory discharge and wrongful discharge in violation of public policy. Mr. Christensen alleged he was entitled to back and front pay, emotional distress damages, costs, and attorney fees.
Samaritan moved for summary judgment, arguing collateral estoppel barred Mr. Christensen's claims. Mr. Christensen filed a cross-motion for summary judgment, arguing the favorable ESD decisions and orders collaterally barred Samaritan's argument that it had terminated Mr. Christensen for a non-retaliatory reason. In response, Samaritan successfully argued RCW 50.32.097 precluded Mr. Christensen from relying on ESD decisions and orders in litigating a matter outside the unemployment compensation area. In March 2002, the trial court issued a letter opinion, followed by a written order, granting Samaritan's summary judgment motion and dismissing Mr. Christensen's claims with prejudice.

ANALYSIS
The issue is whether the trial court erred when granting summary judgment to a public employer (Samaritan) and concluding an adverse PERC adjudication has a preclusive effect on a public employee's (Mr. Christensen's) ability to subsequently bring in superior court a tort claim of wrongful termination in violation of public policy.
In reviewing a summary judgment, we engage in the same inquiry as the trial court. Huff v. Budbill, 141 Wash.2d 1, 7, 1 P.3d 1138 (2000). Summary judgment is justified when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. CR 56(c); Huff, 141 Wash.2d at 7, 1 P.3d 1138. Whether collateral estoppel bars Mr. Christensen's claims is a legal question we review de novo. See Smith v. Bates Technical College, 139 Wash.2d 793, 800, 991 P.2d 1135 (2000).
The parties agree collateral estoppel is central to their controversy. "The doctrine of collateral estoppel is well known to Washington law as a means of preventing the endless relitigation of issues already actually litigated by the parties and decided by a competent tribunal." Reninger v. State Dep't of Corrs., 134 Wash.2d 437, 449, 951 P.2d 782 (1998). "Collateral estoppel promotes judicial economy and prevents inconvenience, and even harassment, of parties." Id. (citing Hanson v. City of Snohomish, 121 Wash.2d 552, 561, 852 P.2d 295 (1993)).
Collateral estoppel consists of four elements:
"(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied."
Reninger, 134 Wash.2d at 449, 951 P.2d 782 (quoting Southcenter Joint Venture v. Nat'l Democratic Policy Committee, 113 Wash.2d 413, 418, 780 P.2d 1282 (1989)). "In addition, the issue to be precluded must have been actually litigated and necessarily determined in the prior action." Shoemaker v. City of Bremerton, 109 Wash.2d 504, 508, 745 P.2d 858 (1987).
Mr. Christensen concedes the first three elements; therefore, we consider Mr. Christensen's main contention that the fourth "injustice" element has not been met. More specifically, Mr. Christensen contends collateral estoppel should not apply (1) because of significant differences between the agency procedure and procedures available in superior court, and (2) because collateral estoppel conflicts with policy considerations. We discuss Mr. Christensen's concessions later.
*103 "Decisions of administrative tribunals may have preclusive effect under Washington law." Reninger, 134 Wash.2d at 449, 951 P.2d 782. We apply three criteria to determine whether an administrative decision will have preclusive effect: (1) whether the agency made a factual decision within its field of competence; (2) whether the agency's procedures were significantly different from procedures available in superior court; and (3) whether application of the collateral estoppel would contravene public policy. Reninger, 134 Wash.2d at 450, 951 P.2d 782. Mr. Christensen argues PERC's decision did not meet the second and third criteria.
Regarding procedural differences, Mr. Christensen complains generally about being represented by the Union's California-based lawyer rather than one of his own choosing, although he successfully pursued his unemployment compensation claim with the same counsel. In any event, Mr. Christensen has not cited any authority precluding him from retaining his own counsel in the PERC forum. RAP 10.3(a)(5).
Similarly without authority, Mr. Christensen argues insufficient discovery because he was represented by a Union lawyer. Overall, Mr. Christensen faults tactical decisions rather than the adequacy of the procedures afforded him. Nothing would have prevented Mr. Christensen from employing independent counsel. Indeed, the record reflects Mr. Christensen did consult his Moses Lake attorney before his termination interview in December 1997.
Moreover, the Administrative Procedures Act (APA), chapter 34.05 RCW, governs PERC adjudication procedures. RCW 41.56.165; see also Wash. Pub. Employees Ass'n v. Wash. Pers. Res. Bd., 91 Wash.App. 640, 656-57, 959 P.2d 143 (1998), review denied, 145 Wash.2d 1034, 43 P.3d 21 (2002). Under the APA, "appropriate procedural protections must be afforded the parties." Reninger, 134 Wash.2d at 450, 951 P.2d 782. PERC can compel witnesses to testify. RCW 34.05.446(2); WAC 391-08-300. Mr. Christensen retained the general right to present evidence, cross-examine witnesses, and submit rebuttal evidence. RCW 34.05.449(2). The available procedures were adequate. See Reninger, 134 Wash.2d at 451, 951 P.2d 782.
On the other hand, Mr. Christensen has a compelling argument regarding policy considerations. Significantly, the Supreme Court has decided the tort of wrongful discharge in violation of public policy extends to public employees notwithstanding the existence of administrative or contractual remedies. See Smith, 139 Wash.2d at 803-08, 991 P.2d 1135. The tort of wrongful discharge in violation of public policy is a distinct cause of action arising not from contract, but from the employer's duty to treat its employees in accordance with public policy. Id. at 803-04, 991 P.2d 1135. The tort's objective is not to enforce the terms and conditions of the employee's contract but rather the public's interest in preventing employers from treating employees in a manner offensive to fundamental public policy. Id. at 804, 991 P.2d 1135.
The Smith court further noted an employee suing in tort for wrongful discharge in violation of public policy can seek a "distinct" remedyemotional distress damages. Id. at 805, 991 P.2d 1135. The Supreme Court additionally reasoned PERC's authority is limited to awarding remedial relief. Id.; see also RCW 41.56.160(1). And, the Smith court observed no authority exists "for the proposition PERC is authorized to award damages for emotional distress." Id. Further, the Supreme Court noted while the statute directs PERC to prevent unfair labor practices, "PERC does not have the authority to adjudicate wrongful discharge tort actions." Id. (citing State ex rel. Graham v. Northshore Sch. Dist. No. 417, 99 Wash.2d 232, 240, 662 P.2d 38 (1983)).
The Smith court reasoned the tort of wrongful discharge in violation of public policy was of such importance it held an aggrieved employee need not exhaust administrative remedies prior to seeking relief in superior court. Id. at 809-11, 991 P.2d 1135. It explained:
[T]he tort of wrongful discharge seeks to vindicate the public interest in prohibiting employers from acting in a manner contrary to fundamental public policy. Because *104 the right to be free from wrongful termination in violation of public policy is independent of any underlying contractual agreement or civil service law, we conclude [the employee] should not be required to exhaust her contractual or administrative remedies.
Id. at 809, 991 P.2d 1135.
Elaborating, the Smith court noted with disapproval the employer had "made no showing PERC has the authority to adjudicate wrongful discharge tort actions or that these actions are within its special expertise." Id. at 810, 991 P.2d 1135. The Supreme Court further observed PERC's limited authority to award remedial relief and that it must petition the superior court for enforcement of its orders. Id.; see also RCW 41.56.160(3).
Then, the Smith court acknowledged Reninger, explaining:
Under Reninger, an employee who loses in an administrative proceeding will be collaterally estopped from attempting to prove the distinct tort of wrongful discharge in violation of public policy. Thus, if employees are required to exhaust all available administrative remedies in order to bring a civil suit for wrongful termination, the administrative remedy could be the only available remedy. Such a rule goes beyond the usual understanding of exhaustion as a prerequisite to seeking judicial relief ... and ignores the fundamental distinction between contract and tort actions.
Smith, 139 Wash.2d at 811, 991 P.2d 1135.
The preceding paragraph is the center-point of this appeal. Samaritan focuses on the first two sentences for the proposition that an unsuccessful PERC procedure will preclude an employee's subsequent tort action. On the other hand, Mr. Christensen focuses on the last sentence and argues Smith undercuts Reninger. For the reasons next discussed, we conclude Mr. Christensen is more persuasive.
The latter interpretation of Smith identifies a shift away from Reninger. The Smith court picks up Justice Sanders' theme from his Reninger dissent in which he reasoned public employees in administrative proceedings were second-class citizens precluded from bringing tort claims to superior court merely because of their status as public employees using the administrative process. See Reninger, 134 Wash.2d at 459-67, 951 P.2d 782; Smith, 139 Wash.2d at 808-11, 991 P.2d 1135.
Reninger encourages resort to administrative remedies and their potential preclusive effect. See Reninger, 134 Wash.2d at 449, 951 P.2d 782. By contrast, Smith discourages reliance on the administrative forum when the tort of wrongful discharge in violation of public policy is at issue. Smith, 139 Wash.2d at 809, 991 P.2d 1135. This shift in Smith indirectly undermines Reninger concerning administrative adjudication of such tort claims. SEE GENERALLY RICHARD A. MORRIS, SMITH V. BATES TECHNICAL COLLEGE: WASHINGTON EXTENDS THE AVAILABILITY OF THE TORT OF WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY, BUT A LITTLE TOO FAR: EMPLOYEES SHOULD STILL EXHAUST OTHER REMEDIES, 25 Seattle U.L.Rev. 677, 694-96 (2002) (contending the Smith court erred in not requiring employees to exhaust their administrative remedies before bringing a wrongful termination in violation of public policy tort action in superior court).
Smith assigns paramount importance to the tort of wrongful discharge in violation of public policy. See Smith, 139 Wash.2d at 805-11, 991 P.2d 1135. The tort is distinctive in nature and remedy, grounded in purely public policy concerns, divorced from contract and civil service law, and thus lying outside PERC's area of competence. Id. at 805, 991 P.2d 1135. An aggrieved public employee claiming wrongful discharge in violation of public policy can bypass the administrative forum entirely and proceed directly to superior court. Id. at 809-11, 991 P.2d 1135. The Smith court's deference to the tort of wrongful termination in violation of public policy conflicts with Samaritan's proposition that an employee who proceeds unsuccessfully through his or her union in the PERC forum is precluded from pursuing his or her tort claim in superior court. See id. at 811, 991 P.2d 1135. Under Smith, PERC adjudication is merely an optional *105 prerequisite to filing the tort claim in superior court. Id. Logically, an aggrieved employee whose union fails to obtain a remedy from PERC should not be precluded from seeking relief on his own under the separate tort theory of wrongful discharge in violation of public policy. See id.
We now briefly discuss the elements and criteria concerning collateral estoppel as they apply in the post-Smith landscape. As earlier noted, Mr. Christensen concedes the first element of collateral estoppel, "identical issues."
Mr. Christensen further concedes PERC has competence in the employment context. However, the Smith court reasoned PERC was not competent to adjudicate a tort claim, specifically a claim of wrongful termination in violation of public policy. Smith v. Bates Technical Coll., 139 Wash.2d 793, 805, 991 P.2d 1135 (2000). That was the very tort claim Mr. Christensen raised for the first time in superior court. Generally, we are not bound by erroneous concessions of law. In re J.F., 109 Wash.App. 718, 732, 37 P.3d 1227 (2001). Arguably, Samaritan failed to meet the agency "competence" criteria.
Smith also undercuts the third "public policy" criteria for determining the preclusive effect of PERC'S adjudication in this case. Fundamental public policy protects an aggrieved employee's wrongful termination tort claim. Consequently, the employee may seek a superior court resolution notwithstanding an adverse agency decision on similar claims arising from contract or statute lying within the agency's field of expertise. See Smith, 139 Wash.2d at 805-11, 991 P.2d 1135. In light of Smith, Samaritan cannot establish the "public policy" criteria.
More generally, collateral estoppel will not apply if it works an injustice. Reninger v. State Dep't of Corrs., 134 Wash.2d 437, 449, 951 P.2d 782 (1998). Applying collateral estoppel mechanically to bar Mr. Christensen's claim leads to a troubling scenario. A similarly-aggrieved employee can bypass the agency remedy entirely without prejudice to his or her superior court tort claim. Smith, 139 Wash.2d at 809, 991 P.2d 1135.
By contrast, Samaritan contends an employee who resorts without success to PERC gives up any possibility of seeking tort redress in superior court. See Reninger, 134 Wash.2d at 449, 951 P.2d 782. But, "[s]uch a rule" ignores the fundamental public policy importance of the tort of wrongful termination in violation of public policy. See Smith, 139 Wash.2d at 811, 991 P.2d 1135. Illustratively, an appellate court in another state held that allowing an adverse agency decision on an employee's discrimination claim to bar "a complete exploration" of the claim in a trial court would permit "a serious infringement upon" the "important public policy" discouraging workplace discrimination. Hahn v. Arbat Sys. Ltd., 200 N.J.Super. 266, 491 A.2d 58, 59 (1985). In light of the foregoing, we conclude applying collateral estoppel in these circumstances would work an injustice.

CONCLUSION
The trial court erred in applying collateral estoppel to bar Mr. Christensen's claims. Samaritan does not dispute that material facts remain as to whether Mr. Christensen's union activity was a substantial factor in Samaritan's termination decision. Accordingly, summary judgment for Samaritan was inappropriate.
Reversed.
WE CONCUR: SCHULTHEIS and KURTZ, JJ.