[No. 16669-4-III. Division Three. February 27, 2001.]

ROBERT E. BESEL, *Petitioner*, v. VIKING INSURANCE COMPANY OF WISCONSIN, *Respondent*.

466

*Michael J. Riccelli*, for petitioner.

*James B. King* (of *Keefe, King & Bowman, P.S.*), for respondent.

KURTZ, C.J. — Mark Ralston, the insured of Viking Insurance Company (Viking), crashed his truck while driving under the influence of alcohol and injured his passenger Robert Besel. Mr. Besel asked Viking several times to pay Mr. Ralston's policy limit. Viking did not respond consistently to Mr. Besel's letters and calls, it did not move promptly to investigate and settle his claim, it did not communicate with Mr. Ralston regarding Mr. Besel's claim prior to litigation, and it lost Mr. Besel's claim file.

Mr. Besel filed suit against Mr. Ralston, who eventually consented to a $175,000 judgment against him in exchange for assignment of his rights against Viking to Mr. Besel and Mr. Besel's covenant not to execute against the judgment. Shortly thereafter, Viking paid Mr. Besel the policy limit of $25,000.

Acting pursuant to the assignment of rights, Mr. Besel

filed suit against Viking, alleging, among other things, a bad faith tort claim and violation of the Consumer Protection Act (CPA), chapter 19.86 RCW. The trial court denied Mr. Besel's summary judgment motion on the common law issues and further determined as a matter of law that any damages sustained by Mr. Ralston were limited to the policy limits of $25,000.

Because the undisputed facts show as a matter of law that Viking acted in bad faith in the handling of Mr. Besel's claim and further violated the CPA, we reverse in part. Further, we reverse the trial court's ruling as to the limit of Mr. Besel's damages and remand for further proceedings on the amount of those damages.

## FACTS

Mr. Ralston crashed his truck while driving under the influence of alcohol on August 18, 1990. His automobile insurance policy with Viking provided $25,000 personal injury liability coverage for a single person. On August 20, Mr. Ralston informed Viking of the accident and the resulting injury to his passenger, Mr. Besel.

Counsel for Mr. Besel sent a letter to Viking on October 15, informing it of Mr. Besel's personal injury claim and demanding it tender Mr. Ralston's policy limits. Viking did not respond.

On November 28, counsel for Mr. Besel sent a second letter to Viking describing the extent of Mr. Besel's injuries and medical expenses and demanding tender of Mr. Ralston's policy limits. The second letter stated Mr. Besel would file suit unless Viking responded by December 7. The November 28 letter prompted a December 7 telephone call from Cher Anderson of Viking stating that the claim had been assigned to Carla Langman.

Having received no further communications from Viking, counsel for Mr. Besel telephoned Viking on December 16 and further informed the insurer of Mr. Besel's claims and the desire to settle for the full policy limits. Viking assured

counsel that Ms. Langman was attending to the file, and that it would respond during the first week of January 1991.

Viking did not respond during the first week of January 1991. Counsel for Mr. Besel then sent a letter on January 8, itemizing Mr. Besel's damages and demanding payment of the $25,000 coverage in Mr. Ralston's policy. The letter also complained of the lack of response from Viking. Viking did not respond.

Counsel for Mr. Besel wrote yet another letter, dated February 28, complaining of Viking's failure to respond. The letter stated that Mr. Besel's damages were expected to exceed $200,000, but that he would settle the matter for the maximum policy limits of $25,000. The letter then stated that Mr. Besel would file suit against Mr. Ralston unless Viking tendered the $25,000 by March 8, 1991.

On March 7, counsel for Mr. Besel called Viking and left a message. John Columbus of Viking returned the call on March 8 to inform counsel that he had received the February 28 letter and also that the claims file could not be located. Mr. Columbus did not request an extension of the settlement deadline.

On March 12, Mr. Columbus called counsel for Mr. Besel and reported that the claims file appeared to have been lost. Again, Mr. Columbus did not ask to have Mr. Besel's settlement deadline extended. On March 13, Mr. Besel filed suit against Mr. Ralston and obtained a default judgment on April 4.

Viking then asked an attorney to have the default judgment set aside on Mr. Ralston's behalf. Viking assessed Mr. Ralston's liability as 100 percent.

When the attorney contacted Mr. Ralston, it was the first word Mr. Ralston had received from anyone connected with Viking with regard to Mr. Besel's claim. Up to that point, the only contact Mr. Ralston had received from Viking had been with regard to the settlement of his property loss claim. But no one from Viking had contacted Mr. Ralston

regarding Mr. Besel's claim. Upon receipt of Mr. Besel's summons and complaint, Mr. Ralston did not inform Viking because he thought the insurance company was already handling the matter.

Mr. Ralston, through Viking's attorney, then succeeded in having the default order set aside on the issue of damages and comparative fault. Mr. Besel and Mr. Ralston eventually settled the matter by means of a stipulated judgment for $175,000, Mr. Besel's covenant not to execute judgment on Mr. Ralston's assets, and assignment of Mr. Ralston's rights under his insurance contract with Viking.

The terms of the agreement between Mr. Besel and Mr. Ralston provides for satisfaction of judgment upon conclusion of Mr. Besel's actions against Viking. Mr. Besel further agreed to satisfy the judgment regardless of his amount of recovery from Viking. And, Mr. Besel also promised to satisfy the judgment if he abandoned his claim against Viking or if the statute of limitation, law, or rule barred the claim.

Viking initially objected to the consent judgment and suggested Mr. Ralston had acted in violation of the cooperation clause of his insurance contract. Ralston's attorney replied that Mr. Ralston had cooperated with him fully in the matter and that his client had little choice but to enter into the agreement with Mr. Besel. The trial court entered an order determining reasonableness and a corresponding judgment in July 1992.

Acting pursuant to the assignment of rights, Mr. Besel filed suit against Viking on July 28, 1993. Mr. Besel's allegations included negligent performance of contractual and legal obligations to Mr. Ralston, breach of contract, bad faith, misrepresentation, violation of chapter 284-30 WAC, and violation of the CPA. Mr. Besel's requested relief included $150,000 in damages—the balance of his earlier $175,000 judgment against Mr. Ralston, minus the $25,000 paid by Viking.

Viking and Mr. Besel filed cross-motions for summary

judgment. The trial court entered an oral ruling denying Mr. Besel's summary judgment motion and partly granting and partly denying Viking's summary judgment motion. The court reasoned that genuine issues of material fact existed as to Mr. Besel's claims of bad faith and CPA violation. But with regard to Mr. Ralston's alleged damages, the trial court limited his recovery to $25,000, reasoning that Mr. Ralston had shown no other damages. The trial court entered a consistent order and further denied Mr. Besel's motions for reconsideration.

Mr. Besel filed an appeal. Viking did not appeal the trial court's partial denial of its own summary judgment motion. A commissioner of this court granted discretionary review.

Mr. Besel then moved to supplement the record with new evidence. The commissioner remanded the matter to the trial court for consideration of the newly discovered evidence and entry of appropriate findings. The commissioner further stayed the appeal pending completion of trial court proceedings.

The trial court considered briefing and argument on the newly discovered evidence, which consisted of affidavits and depositions pertaining to the impact of the consent judgment on Mr. Ralston's ability to obtain financing to purchase a home. The trial court then entered findings of fact.

Upon receipt of the trial court's findings, this court lifted the stay and later allowed Mr. Besel to supplement the record on appeal over Viking's objection.

### STANDARD OF REVIEW

In reviewing a ruling on summary judgment, we engage in the same inquiry as the trial court. *Huff v. Budbill*, 141 Wn.2d 1, 7, 1 P.3d 1138 (2000). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Huff*, 141 Wn.2d at 7. "A material fact is one upon which the outcome of the litigation

depends." *Dien Tran v. State Farm Fire & Cas. Co.*, 136 Wn.2d 214, 223, 961 P.2d 358 (1998) (citing *Ruff v. County of King*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995)). We review all facts and reasonable inferences in the light most favorable to the nonmoving party. *Huff*, 141 Wn.2d at 7. And, we review questions of law de novo. *Id.*

## ANALYSIS

The issue before this court is whether the trial court erred in denying Mr. Besel's summary judgment motion on his common law and CPA claims, and in limiting his common law damages to $25,000.

A. Assignment of Insurance Claims

Preliminarily, we note Mr. Besel asserts his claim under an agreement assigning Mr. Ralston's rights with regard to Viking.

 "An assignee steps into the shoes of the assignor, and has all of the rights of the assignor." *Estate of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 495, 844 P.2d 403 (1993) (citing *Morse Electro Prods. Corp. v. Beneficial Indus. Loan Co.*, 90 Wn.2d 195, 198, 579 P.2d 1341 (1978)). And, the assignee's rights are no greater than those of the assignor. 3 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE 3D § 37:1 (1995).

"The assignee's cause of action is direct, not derivative." *Jordan*, 120 Wn.2d at 495 (citing *Okla. Morris Plan Co. v. Sec. Mut. Cas. Co.*, 455 F.2d 1209, 1212 (8th Cir. 1972); *Fed. Deposit Ins. Corp. v. Nat'l Sur. Corp.*, 425 F. Supp. 200, 203 (E.D.N.Y. 1977)). The assignee "may sue on the policy in his or her own name, and may speak in the place of the assignor." 3 RUSS & SEGALLA, *supra*, § 37:14 (footnotes omitted).

"The assignee's rights are coextensive with those of the assignor at the time of the assignment." *Steinmetz v. Hall-Conway-Jackson, Inc.*, 49 Wn. App. 223, 227, 741 P.2d 1054 (1987) (citing *Home Indem. Co. v. McClellan Motors, Inc.*, 77 Wn.2d 1, 3-4, 459 P.2d 389 (1969)); *see also Safeco*

*Ins. Co. v. Butler*, 118 Wn.2d 383, 399, 823 P.2d 499 (1992). " '[A] covenant not to execute coupled with an assignment and settlement agreement is not a release permitting the insurer to escape its obligation.' " *Steinmetz*, 49 Wn. App. at 227 (quoting *Kagele v. Aetna Life & Cas. Co.*, 40 Wn. App. 194, 198, 698 P.2d 90 (1985)). Such an agreement seeks "recovery only from a specific asset—the proceeds of the insurance policy and the rights owed by the insurer to the insured." *Butler*, 118 Wn.2d at 399 (citing *Barr v. Gen. Accident Group Ins. Co.*, 360 Pa. Super. 334, 520 A.2d 485, 489 (1987)).

*Steinmetz* is persuasive with regard to Mr. Besel's rights as assignee. There, the insured faced potential liability of $2 million, but her insurance policy would pay only $100,000. *Steinmetz*, 49 Wn. App. at 225.

The insured then reached a $600,000 settlement with the injured party. *Id.* at 225. The insured paid the injured party the $100,000 available under her policy and assigned her negligence claim against her insurer in return for a covenant not to execute on the judgment. *Id.* The injured party/assignee then sued the insurance company in malpractice for failure to provide the amount of coverage requested by the insured. *Id.* The trial court granted summary judgment, reasoning the covenant not to execute relieved the insurer of liability. *Id.* at 225-26.

Division Two of this court reversed, reasoning that the fact that the insured "did not pay out of her own pocket and was not subjected to personal liability . . . is immaterial." *Id.* at 228. The determinative fact was that the insured was forced to enter into a settlement agreement because of the insurer's negligence. *Id.* Division Two reasoned that because the trial court focused on the effect the covenant had on the insured's personal liability rather than her right to sue her insurer at the time of the assignment, the trial court erred in finding as a matter of law that the insured had incurred no damages. *Id.*

Here, Viking's mishandling of Mr. Besel's claim placed Mr. Ralston in the position of facing personal liability

several times greater than his insurance coverage. *Id.* at 225. Mr. Ralston had little choice but to agree to the stipulated judgment and covenant not to execute. *Id.* at 228.

Viking did not contest the stipulated judgment and assignment. And, at the time of assignment, Mr. Ralston had credible claims against Viking for its mishandling of the Besel matter. *Id.* Mr. Besel now properly asserts these claims directly in place of Mr. Ralston. *Jordan,* 120 Wn.2d at 495.

## B. Bad Faith

Mr. Besel argues the undisputed material facts support summary judgment on his claim that Viking acted in bad faith on his claim. We agree.

 Washington recognizes the tort of bad faith in the insurance context. *Kirk v. Mt. Airy Ins. Co.,* 134 Wn.2d 558, 560, 951 P.2d 1124 (1998). "This cause of action acknowledges that the business of insurance affects the public interest and that an insurer has a duty to act in good faith." *Id.* at 560 (citing RCW 48.01.030).

The insurer's duty to act in good faith is interchangeable with its liability for acting in bad faith. *Tank v. State Farm Fire & Cas. Co.,* 105 Wn.2d 381, 385, 715 P.2d 1133 (1986). The source of this duty is the fiduciary relationship between the insurer and the insured. *Id.* This relationship implies that an insurer is under " 'a broad obligation of fair dealing' " with its insured. *Id.* (quoting *Tyler v. Grange Ins. Ass'n,* 3 Wn. App. 167, 173, 473 P.2d 193 (1970)).

 Historically, an insurer's failure to investigate a claim and "to make a good faith attempt to effect settlement" when it appeared the insured would be found liable would constitute bad faith. *Burnham v. Commercial Cas. Ins. Co.,* 10 Wn.2d 624, 631, 117 P.2d 644 (1941). This general duty of good faith applies in the third party context even where there has been no reservation of rights. *See Hamilton v. State Farm Ins. Co.,* 83 Wn.2d 787, 791-92, 523 P.2d 193 (1974); *Murray v. Mossman,* 56 Wn.2d 909, 911,

355 P.2d 985 (1960); *Burnham*, 10 Wn.2d at 628-29; *Tyler*, 3 Wn. App. at 172-73.

As noted earlier, the insurer's general duties of good faith are imposed by statute. RCW 48.01.030; *Kirk*, 134 Wn.2d at 560; *Tank*, 105 Wn.2d at 386. And, provisions of the Washington Administrative Code (WAC), Title 284, define "specific acts and practices which constitute a breach of an insurer's duty of good faith." *Tank*, 105 Wn.2d at 386; *see* WAC 284-30-330. Moreover, "[t]his fiduciary duty to act in good faith is fairly broad and may be breached by conduct short of intentional bad faith or fraud." *Indus. Indem. Co. v. Kallevig*, 114 Wn.2d 907, 916-17, 792 P.2d 520 (1990) (citing *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 99 Wn.2d 65, 73, 659 P.2d 509 (1983); *Whistman v. W. Am. of Ohio Cas. Group of Ins. Cos.*, 38 Wn. App. 580, 584-85, 686 P.2d 1086 (1984); *Safeco Ins. Co. v. JMG Rests., Inc.*, 37 Wn. App. 1, 11, 680 P.2d 409 (1984)).

Two WAC provisions are most pertinent here: "Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies," WAC 284-30-330(2); and, "Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." WAC 284-30-330(6).

Two other WAC provisions require an insurer to respond to notification of a claim within 10 working days, WAC 284-30-360(1), and to respond to pertinent communications from a claimant within 10 working days, WAC 284-30--360(3). Yet another provision requires the insurer to complete investigation of a claim within 30 days of notification unless the investigation cannot be reasonably completed within that time. WAC 284-30-370.

Viking contends the above-cited WAC provisions apply only to first party insureds, such as Mr. Ralston. Assuming without deciding that Viking is correct, their argument ignores Mr. Besel's status as assignee of Mr. Ralston's claims against Viking. *See Jordan*, 120 Wn.2d at 495; *Butler*, 118 Wn.2d at 399; *Steinmetz*, 49 Wn. App. at 227.

Because Mr. Besel stands in Mr. Ralston's shoes, the regulatory standards clearly apply.

 Generally, the existence of insurer bad faith is a question of fact. *Butler*, 118 Wn.2d at 395. As moving party, Mr. Besel "bears the burden of showing the absence of an issue of material fact." *Id.* (citing *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989)).

Here, the undisputed facts show that (1) Viking failed to respond to the October 1990 letter from Mr. Besel; (2) Viking did not respond to the January 1991 letter from Mr. Besel; (3) Viking did not communicate with Mr. Ralston regarding Mr. Besel's claim; (4) Viking lost the Besel claim file; and (5) Viking could offer no explanation for its actions with regard to the foregoing. *Cf. Butler*, 118 Wn.2d at 395 (noting that insurer produced evidence explaining alleged acts of bad faith); *see also Keller v. Allstate Ins. Co.*, 81 Wn. App. 624, 632, 915 P.2d 1140 (1996) (noting that insurer violates duty to act in good faith when it acts without reasonable justification).

Viking's unexplained failure to respond to the claim and related correspondence in a timely fashion was a clear violation of the 10-day response requirement of WAC 284-30-360(1) and (3). These violations support a finding that Viking engaged in an unfair or deceptive practice pursuant to WAC 284-30-330(2) (failure to acknowledge and act reasonably promptly upon communications pertaining to claims). Such acts "constitute a breach of an insurer's duty of good faith." *Tank*, 105 Wn.2d at 386; *see also Keller*, 81 Wn. App. at 632.

Viking argues that it cannot be found to have acted in bad faith merely because it failed to settle the claim within the "artificial" deadline set by Mr. Besel's counsel. This argument lacks merit because (1) it ignores Viking's repeated failure to respond to correspondence from Mr. Besel, (2) it overlooks Viking's failure to communicate with Mr. Ralston, and (3) it disregards Viking's unexplained loss of the claims file.

Viking also complains that Mr. Ralston did not inform it

of the lawsuit filed by Mr. Besel. In this regard, Mr. Ralston's insurance contract states that he is to send Viking any legal papers served upon him as a result of the accident. Mr. Ralston testified that he did not send the summons and complaint to Viking because he thought his insurer was already handling the matter.

Viking's argument is ultimately unpersuasive for a number of reasons. First, Viking has not asserted that Mr. Ralston breached the insurance contract, and, moreover, it eventually paid the full amount of Mr. Ralston's contracted coverage. Second, Mr. Ralston informed Viking of Mr. Besel's injuries. Third, Mr. Besel informed Viking of his claim in October 1990. And fourth, Viking succeeded in having the default judgment set aside except on the issue of liability, which was clear from the outset. Accordingly, Viking cannot complain that it was a victim of unfair surprise.

Viking contends also that it had no duty to investigate on behalf of Mr. Ralston prior to filing of the lawsuit. This argument is unpersuasive as it ignores Viking's failure to communicate with Mr. Besel on Mr. Ralston's behalf. And, this argument is contrary to the WAC provisions cited above and Viking's separate contract promise to investigate claims.

Additionally, Viking, relying on *Insurance Co. v. Highlands Insurance Co.*, 59 Wn. App. 782, 801 P.2d 284 (1990), contends that "mistakes and clumsiness" in handling Mr. Besel's claim do not constitute bad faith. Viking's reliance on *Highlands* is misplaced; there, the insurer's delay in handling the claim was based on an honest mistake in determining liability. *Id.* at 786. Noting the nonfrivolous cause of the delay, Division Two of this court determined the insurer had not acted in bad faith. *Id.* at 786-87. Here, by contrast, the reasons for the delay were frivolous: Viking has offered no explanation as to why it did not respond to Mr. Besel's letters of October 15, 1990, and January, 8, 1991; why it failed to contact Mr. Ralston regarding the claim; why it lost the claim file; and, why it did not search

for the lost file until March 1991.

Having reviewed the record in a light favorable to Viking, we must necessarily conclude that Viking acted in bad faith as a matter of law, and, thus, the trial court erred in not granting Mr. Besel summary judgment on that issue.

### C. Damages

Mr. Besel argues that the trial court erred in limiting his recovery on the bad faith claim to Mr. Ralston's policy limits of $25,000. Viking contends, and the trial court agreed, that recovery is limited to the contract amount because there was no reservation of rights. Both parties rely on conflicting interpretations of *Safeco Insurance Co. v. Butler*, 118 Wn.2d 383, 823 P.2d 499 (1992), and *Greer v. Northwestern National Insurance Co.*, 109 Wn.2d 191, 743 P.2d 1244 (1987). We conclude the trial court erred.

### 1. Contract v. Bad Faith Claims

*Butler* was a bad faith claim that did entail a reservation of rights, yet nothing in that opinion limits recovery beyond the contract amount to the reservation of rights context. The essential determinations are whether the insured asserts a bad faith claim and whether the claim is set in the third party context. *See, e.g., Hamilton v. State Farm Ins. Co.*, 83 Wn.2d 787, 791-92, 523 P.2d 193 (1974). Here, Mr. Besel asserts a bad faith claim under his assignment from Mr. Ralston and the dispute arises from Mr. Besel's third party claim. Consequently, the lack of reservation of rights does not bar recovery beyond the contract limits.

*Greer* limited the amount of recovery to the policy limits, but did so solely on a contract theory of recovery. *Greer*, 109 Wn.2d at 202-04. Here, Mr. Besel asserted a tort claim in bad faith as well as contract;[1] the existence of bad faith removes the dispute from the general contract rules. *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 562, 951 P.2d 1124 (1998).

---

[1] On appeal, Mr. Besel has not briefed breach of contract as a separate theory of recovery. Thus, we will treat the breach of contract claim as abandoned. *R.A. Hanson Co. v. Magnuson*, 79 Wn. App. 497, 505, 903 P.2d 496 (1995).

"The tort of bad faith recognizes that traditional contract damages do not provide an adequate remedy for a bad faith breach of contract because an insurance contract is typically an agreement to pay money, and recovery of damages is limited to the amount due under the contract plus interest." *Id.* at 560 (citing 15A GEORGE J. COUCH, COUCH CYCLOPEDIA OF INSURANCE LAW § 56:10, at 17 (2d ed. 1983)). Accordingly, the trial court erred in stating as a matter of law that damages should be limited to the contract amount only.

### 2. Presumption of Harm

A related issue is whether harm to the insured is presumed. The *Tank* court held that the potential conflicts of interest inherent in a reservation of rights defense trigger an enhanced duty on the part of the insurer. *Tank*, 105 Wn.2d at 387. The *Butler* court held that once the insured has established the insurer's bad faith, a rebuttable presumption of harm arises. *Butler*, 118 Wn.2d at 390-92.

Again, *Butler* involved a reservation of rights defense, but did not specifically limit its holding to those circumstances. By contrast, the *Butler* court stated broadly that it would "presume prejudice in any case in which the insurer acted in bad faith." *Id.* at 391. The *Kirk* court interpreted the broad language in *Butler* as requiring a presumption of harm whenever the insurer acts in bad faith. *Kirk*, 134 Wn.2d at 562.

Later, the Supreme Court modified the presumption of harm rule to exclude first party claims. *Coventry Assocs. v. Am. States Ins. Co.*, 136 Wn.2d 269, 281, 961 P.2d 933 (1998). The *Coventry* court, citing *Tank*, 105 Wn.2d at 387, recognized that the potential conflict of interest inherent in the third party context mandates a higher duty on the part of the insurer and thus warrants the presumption of harm. *Coventry*, 136 Wn.2d at 281. The *Coventry* court then reasoned that the potential conflict of interest does not exist in the first party context, and thus a rebuttable presumption of harm is not warranted. *Id.*

Here, in contrast to *Butler* and *Tank,* there was no

reservation of rights defense. But the action clearly arose in the third party context and involved Viking's failure to look out for the interests of its insured. The underlying policy problem is the same notwithstanding the absence of a reservation of rights; Viking's bad faith breach of its insurance contract deprived Mr. Ralston of the full benefit of his insurance contract. *Coventry*, 136 Wn.2d at 282-83. Because of the bad faith, Mr. Ralston was deprived of the opportunity to have the claim settled promptly within his policy limits, was needlessly exposed to litigation, and was forced to submit to a substantial judgment. Consequently, here, too, harm should be presumed.

To rebut the presumed harm, it appears Viking offers the trial court's findings of fact on Mr. Ralston's subsequent purchase of a home. Mr. Besel has not assigned error to the trial court's findings, but, in the summary judgment context, trial court findings of fact "are superfluous and will not be considered on appeal." *Concerned Coupeville Citizens v. Town of Coupeville*, 62 Wn. App. 408, 413, 814 P.2d 243 (1991) (citing *Donald v. City of Vancouver*, 43 Wn. App. 880, 883, 719 P.2d 966 (1986)).

In any event, the undisputed facts show that Viking's inaction resulted in Mr. Ralston undergoing litigation, which ultimately resulted in a $175,000 judgment. The judgment initially prevented Mr. Ralston from obtaining real estate financing.

It appears Mr. Ralston later obtained financing and title insurance with the aid of an indemnification agreement from Viking. We will not consider the indemnification agreement as it does not exist in our record. In any event, assuming without deciding that the indemnification agreement is valid, it merely shows that it is possible to work around the judgment for purposes of real estate finance. Notwithstanding the indemnification agreement, the judgment exists, constitutes a cloud on Mr. Ralston's title, and is a source of concern for real estate lenders.

Consequently, Viking cannot claim Mr. Ralston was not harmed by its bad faith. But the additional evidence does

raise a genuine issue of material fact as to the full extent of Mr. Besel's damages. These damages are left to the trier of fact to determine.

### 3. Estoppel

On a related damages issue, Mr. Besel asserts Viking is estopped from refusing to pay the entire judgment amount. While we agree that Viking is liable for damages beyond the contract amount of coverage, we are not persuaded it must necessarily pay the entire judgment amount.

Generally, once an insured has established harm resulting from the insurer's bad faith, the insured is entitled to an appropriate remedy. *Coventry*, 136 Wn.2d at 283.

> We have recognized that, with great unanimity, the cases hold that an insurance company which has paid a judgment against its insured to the extent of its liability under the policy of insurance, may be held liable for damages to its insured for a failure to adjust or compromise a claim within the limits of liability, if that failure is attributable to negligence or bad faith.

*Hamilton*, 83 Wn.2d at 791 (citing *Murray v. Mossman*, 56 Wn.2d 909, 355 P.2d 985 (1960); *Bowker v. McDonald*, 49 Wn.2d 633, 305 P.2d 800 (1957); *Burnham v. Commercial Cas. Ins. Co.*, 10 Wn.2d 624, 117 P.2d 644 (1941)). And, the insurer's liability for bad faith handling of a claim may extend beyond the policy limits. *Greer*, 109 Wn.2d at 203 n.6.

The remedy of estoppel extends to bad faith claims arising from reservation of rights defenses. *Butler*, 118 Wn.2d at 392. The remedy applies also to the insurer's bad faith failure to defend. *Kirk*, 134 Wn.2d at 565. But the estoppel remedy does not apply to contract claims. *Greer*, 109 Wn.2d at 202-03. Nor does estoppel apply to first party claims. *Coventry*, 136 Wn.2d at 284.

The situation here is more analogous to *Butler* and *Kirk*. Viking had a contractual and statutory duty to investigate the claim, settle it in a reasonable time, and defend Mr. Ralston in a lawsuit arising from the claim. The undisputed facts in the record show that Viking deprived Mr. Ralston of

these important benefits. *Kirk*, 134 Wn.2d at 564. Thus, he is entitled to damages beyond the contract amount. *Greer*, 109 Wn.2d at 203 n.6; *Hamilton*, 83 Wn.2d at 791; *see also Kirk*, 134 Wn.2d at 564 (noting that bad faith failure to defend "will create liability for the insurer to pay at least policy limits"). But these authorities do not further persuade us that the appropriate remedy here is to award Mr. Besel the full amount of judgment.

In this connection, Mr. Besel suggests that satisfaction of the full $175,000 judgment is the only appropriate remedy. But Mr. Besel's argument is logically inconsistent with the terms of the agreement between himself and Mr. Ralston. According to the agreement, Mr. Besel will enter a satisfaction of judgment upon the conclusion of this matter. Consequently, whether Mr. Besel wins, loses, or abandons his claims, he will ultimately extinguish the judgment against Mr. Ralston.

Thus, we hold Mr. Besel's damages are not limited to the $25,000 policy limits, but we do not also conclude as a matter of law that satisfaction of the entire remaining judgment amount is the appropriate remedy. The full extent of Mr. Besel's damages is to be established at trial.

D. Consumer Protection Act Claim

Mr. Besel argues that the trial court erred in not granting him summary judgment on his CPA claim. We agree.

■ "Whether a particular action gives rise to a CPA violation is reviewable as a question of law." *Estate of Hall v. HAPO Fed. Credit Union*, 73 Wn. App. 359, 365, 869 P.2d 116 (1994) (citing *Keyes v. Bollinger*, 31 Wn. App. 286, 289, 640 P.2d 1077 (1982)).

■ A private citizen asserting a CPA claim must show: "(1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the party in his business or property, and (5) which injury is causally linked to the unfair or deceptive act." *Indus. Indem. Co. v. Kallevig*, 114 Wn.2d 907, 920-21, 792 P.2d 520 (1990) (citing *Hangman Ridge Training*

*Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986)). A failure to meet one prong of the test is fatal to the CPA claim. *Hangman Ridge* at 793.

 It is well settled that a "single violation of WAC 284-30-330 constitutes a violation of RCW 48.30.010." *Kallevig*, 114 Wn.2d at 925. "Under RCW 19.86.170, a violation of RCW 48.30.010 is a per se unfair trade practice and satisfies the first element of the 5-part test for bringing a CPA action under RCW 19.86.090." *Id.*

As noted earlier, Viking clearly violated WAC 284-30--360(1) and (3). These violations constitute a per se unfair trade practice thus satisfying the first element of Mr. Besel's CPA claim. *Id.* The second and third elements of the claim are met as well because the Legislature and courts have clearly stated that violations of the insurance code fall within the ambit of the CPA. RCW 48.30.010; RCW 19.86.020; *Kallevig*, 114 Wn.2d at 921-22.

 With regard to the fourth element, the CPA claimant must establish a specific injury to his business or property. *Hangman Ridge*, 105 Wn.2d at 792. "The injury involved need not be great, but it must be established." *Id.*

Moreover, the term "injury" is separate from "damages." *See Mason v. Mortgage Am., Inc.*, 114 Wn.2d 842, 854, 792 P.2d 142 (1990). A "nonquantifiable" injury, such as loss of good will, or a nonspecific or relatively minor monetary injury such as some diminution in value of property or money will suffice to satisfy the injury requirement. *Id.* "Damages" pertains to treble damages based upon "actual damages" awarded under the CPA. *Id.* at 855.

Viking argues there was no harm because the covenant not to execute insulates Mr. Ralston from any future personal liability and thus he cannot show damages beyond the $25,000 policy limits. This argument is unpersuasive, as the agreement between Ralston and Besel may be breached by the parties' failure to cooperate.

It is an undisputed fact that as a result of Viking's mishandling of the claim, Mr. Ralston concedes to a

$175,000 judgment. And, the existence of the covenant not to execute does not necessarily insulate Mr. Ralston; the judgment is clearly a source of concern for lenders and title insurance companies. In this connection, the record contains a letter from a mortgage company seeking a release of judgment because Mr. Ralston was unable to secure financing to purchase a home.

Overall, viewed in a light favorable to the nonmoving party, Viking, the record shows that the judgment initially prevented Mr. Ralston from obtaining real estate financing although he was eventually able to overcome that difficulty to purchase a home. Nonetheless, the judgment continues on Mr. Ralston's title and will complicate future financing transactions so long as it exists.

Thus, there is harm to Mr. Ralston's creditworthiness, albeit minimal. *Mason*, 114 Wn.2d at 854-55; *Hangman Ridge*, 105 Wn.2d at 792. Accordingly, Mr. Besel has established the element of injury as a matter of law.

The final element, causation, requires some causal link between the harm and the deceptive and unfair business practice. *Hangman Ridge*, 105 Wn.2d at 793. The record establishes that Viking's failure to respond to Mr. Besel's claim in a timely manner resulted in Mr. Ralston submitting to the judgment. And, the letter from the mortgage company clearly links the judgment with Mr. Ralston's difficulties in obtaining financing. Consequently, Mr. Besel has also established the causation element as a matter of law.

Mr. Besel has met all five elements of his CPA claim. Thus, the trial court erred in not granting summary judgment on that issue. Mr. Besel is entitled to treble damages pursuant to RCW 19.86.090. As it appears Viking concedes that it is liable at least to the full extent of Mr. Ralston's $25,000 policy limits, it follows that Viking is liable also for the statutory maximum of $10,000 treble damages set forth in RCW 19.86.090.

E. Prejudgment Interest

██ ██ Mr. Besel requests prejudgment interest. We need not determine this issue as it is premature. Nevertheless, we note that prejudgment interest is appropriate solely when the claim is liquidated. *Hansen v. Rothaus*, 107 Wn.2d 468, 472-73, 730 P.2d 662 (1986). A claimant is not entitled to an award of prejudgment interest when the amount of the claim is not liquidated. *Peterson v. Safeco Ins. Co.*, 95 Wn. App. 254, 264, 976 P.2d 632 (1999). The trial court will determine whether prejudgment interest is appropriate in accordance with the above authorities.

F. Attorney Fees

██ Because Mr. Besel has prevailed on his CPA claim, he may recover reasonable attorney fees pursuant to RCW 19.86.090. *See Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 334-35, 858 P.2d 1054 (1993); *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 169-70, 795 P.2d 1143 (1990). Mr. Besel may also recover attorney fees on appeal provided he complies with RAP 18.1. *Schmidt*, 115 Wn.2d at 170-71; *Mason*, 114 Wn.2d at 856. The trial court is to determine reasonable fees on remand. *Physicians Ins. Exch.*, 122 Wn.2d at 336.

Accordingly, we reverse and remand for further proceedings consistent with this opinion.

BROWN, J., and GREEN, J. Pro Tem., concur.

Motions for reconsideration denied April 5, 2001.

Review granted at 144 Wn.2d 1016 (2001).