[No. 26721-7-II.   Division Two.   July 19, 2002.]

JANICE M. SMITH, ET AL., *Appellants*, v. SAFECO INSURANCE
COMPANY, ET AL., *Respondents*.

*David M. Beninger* (of *Luvera, Barnett, Brindley, Beninger & Cunningham*) and *Patricia E. Anderson*, for appellants.

*R. Scott Fallon* (of *Fallon & McKinley*), for respondents.

*Robert D. Reinhard*, for respondent Bryce.

MORGAN, J. — The main question in this case is whether an insurer breaches the duty of good faith that it owes *to its insured* (as opposed to a third party claimant) by not complying with the demand of a third party claimant, made before any lawsuit is filed, for the disclosure of the insured's policy limits. The answer is no under the circumstances present here.

In April 1997, a car driven by Janice Smith[1] was rear-ended by a car driven by Linda Bryce. Smith was injured. Bryce had $100,000 of liability insurance through Safeco Insurance Company. Bryce disclosed her insurer but not her policy limits.

At a time not shown in the record, Smith retained counsel to assist her with claims "against Bryce/Safeco and, poten-

---

[1] Smith's husband is also a party. For convenience, we refer only to her.

tially, against the Smiths' own UIM carrier, Farmers Insurance."[2] Before doing that, as far as the record shows, Smith did not furnish Safeco with any information about her injuries.

After being retained, Smith's counsel did not make a written settlement demand or otherwise describe Smith's claim in writing.[3] On February 24, 1999, however, a "claims specialist" employed by Smith's counsel asserted to a Safeco adjuster, over the telephone, that Smith had a "closed head injury," "loss of memory," medical bills "close to $20k," and past and future wage loss.[4]

On at least four occasions between August 1998 and March 1999, including the one on February 24, 1999, Smith demanded that Safeco disclose Bryce's liability limits. Safeco declined, pending receipt of written documentation concerning Smith's claim. It reasoned (1) that it did not "have enough info[rmation] to believe the value of the demand exceeds our insured's liab[ility] limits,"[5] and (2) that it did not know whether Bryce would consent or object to such disclosure.[6]

On March 29, 1999, Smith sued Bryce. On May 17,1999, Smith sent Safeco a written description of her claim and a demand for "full policy limits" if "less then [sic] $1.5 million."[7] She asserted for the first time that "[s]pecial out of pocket damages alone exceed $612,000."[8] On May 26, 1999, Safeco told Smith that Bryce's applicable policy limit was $100,000. On July 30, 1999, Safeco paid that amount to Smith.

---

[2] Clerk's Papers (CP) at 15.

[3] Smith states in a motion for reconsideration that she "sent a written demand on March 4, 1999." Mot. for Recons., 2. This implies that she sent a written settlement demand. When one examines her citation to the record, however, one finds a written demand for disclosure of Bryce's policy limits, *not* a written demand for settlement of her claim.

[4] *Id.* at 60.

[5] *Id.* at 61; *see also id.* at 63.

[6] Between August 1998 and April 1999, Safeco was not in contact with Bryce. Safeco no longer insured Bryce, and Safeco did not have her current address. Smith argues that Safeco could have located Bryce with reasonable effort, and we will assume that is true.

[7] CP at 101.

[8] *Id.*

On September 22, 1999, Smith settled with Bryce. Bryce agreed to have "partial judgment entered against her in the amount of $100,000,"[9] and to assign her rights, if any, against Safeco. Smith gave Bryce a "covenant not to execute or enforce judgment."[10]

On October 19, 1999, Safeco filed a complaint for declaratory judgment against Bryce and Smith. It alleged that it had not disclosed Bryce's limits earlier because that "usually result[s] in a settlement demand for more than the policy limits or, in a time limits settlement demand," and "[n]either of those is in the insured's best interest."[11] It further alleged that it "has not committed bad faith" and "is not bound by any Stipulated Judgment entered against Linda Bryce."[12]

On January 19, 2000, Smith amended her personal injury complaint to add bad faith claims against Safeco. Acting in her own right and also as Bryce's assignee, she alleged that Safeco had breached its duty of good faith by "refus[ing] to disclose Linda Bryce['s] liability policy limits."[13] On July 12, 2000, the trial court consolidated Smith's personal injury action and Safeco's declaratory judgment action.

On August 25, 2000, the parties filed cross-motions for summary judgment on the issue of bad faith. On September 22, 2000, the trial court orally denied Smith's motion and granted Safeco's. On November 8, 2000, the trial court entered a written order. On December 5, 2000, Smith filed this appeal.

Smith now makes two claims on appeal. First, she claims that Safeco owed *her* a duty of good faith; that Safeco breached its duty *to her*; that Safeco's breach proximately

[9] *Id.* at 12.

[10] *Id.* at 13.

[11] *Id.* at 219.

[12] *Id.* at 220.

[13] *Id.* at 5.

caused harm *to her*; and that she is entitled to compensation. Second, she claims that Safeco owed *Bryce* a duty of good faith; that Safeco breached its duty *to Bryce*; that Safeco's breach proximately caused harm *to Bryce*; and that she is entitled to compensation as Bryce's assignee. While addressing both claims, we take the facts and inferences in the light most favorable to Smith.[14]

# I

■ Smith's first claim is easily dealt with. She asserts that "insurers owe a duty to third party claimants to cooperate with investigation of a claim, including disclosure of limits."[15] In *Tank v. State Farm Fire & Casualty Co.*,[16] however, the Washington Supreme Court held that "third party claimants may not sue an insurance company directly for alleged breach of duty of good faith under a liability policy."[17] Later cases hold likewise.[18] Thus, Smith has no claim against Safeco in her own right.

# II

■■ Smith's second claim requires more discussion. An insurer owes *its insured* a duty to act in good faith.[19] When the insured is likely to be found liable, this duty encom-

---

[14] *Ellwein v. Hartford Accident & Indem. Co.*, 142 Wn.2d 766, 775, 15 P.3d 640 (2001); *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 394-95, 823 P.2d 499 (1992).

[15] Br. of Appellant at 38.

[16] 105 Wn.2d 381, 715 P.2d 1133 (1986).

[17] *Tank*, 105 Wn.2d at 391.

[18] *Neigel v. Harrell*, 82 Wn. App. 782, 784-85, 919 P.2d 630, *review denied*, 130 Wn.2d 1021 (1996); *Planet Ins. Co. v. Wong*, 74 Wn. App. 905, 909-10, 877 P.2d 198, *review denied*, 125 Wn.2d 1008, 889 P.2d 498 (1994).

[19] RCW 48.01.030; *Ellwein*, 142 Wn.2d at 775; *Indus. Indem. Co. of N.W., Inc. v. Kallevig*, 114 Wn.2d 907, 916-17, 792 P.2d 520 (1990); *Hamilton v. State Farm Ins. Co.*, 83 Wn.2d 787, 791, 523 P.2d 193 (1974); *Griffin v. Allstate Ins. Co.*, 108 Wn. App. 133, 143, 29 P.3d 777 (2001), *review denied*, 146 Wn.2d 1005, 45 P.3d 551 (2002); *Besel v. Viking Ins. Co.*, 105 Wn. App. 463, 474-75, 21 P.3d 293, *review granted*, 144 Wn.2d 1016 (2001); *Tyler v. Grange Ins. Ass'n*, 3 Wn. App. 167, 173, 178, 473 P.2d 193 (1970).

passes "an affirmative duty to make a good faith effort to settle."[20] Depending on the particular facts and circumstances, this duty may also encompass duties to investigate in good faith, evaluate in good faith, and negotiate in good faith.[21]

■ An insurer breaches its affirmative duty to make a good faith effort to settle by negligently or in bad faith "failing to settle a claim against the insured within its policy limits."[22] Factors bearing on breach include, but are not limited to, "the strength of the injured claimant's case on the issues of liability and damages"; the adequacy of the insurer's investigation and evaluation; the adequacy of the insured's policy limits and the consequent "risk to which each party [insurer and insured] is exposed in the event of a refusal to settle"; willingness or refusal to negotiate and the resulting "climate for settlement"; and any other action by the insurer "demonstrat[ing] greater concern for the insurer's monetary interest than [for] the financial risk attendant to the insured's predicament."[23] At trial, the insured has the burden of proving breach.[24]

■ These principles can be applied on summary judgment. When an insurer moves for summary judgment in this context, it necessarily claims that a rational trier of fact could not find that the insurer breached its "affirmative duty to make a good faith effort to settle." To support such

---

[20] *Truck Ins. Exch. of Farmers Ins. Group v. Century Indem. Co.*, 76 Wn. App. 527, 534, 887 P.2d 455, *review denied*, 127 Wn.2d 1002 (1995); *see also* WAC 284-30-330(6); *Hamilton*, 83 Wn.2d at 791-92 (insurer has duty "to make a good faith attempt to effect settlement"; insurer "may be held liable for damages to its insured for a failure to adjust or compromise a claim within the limits of liability, if that failure is attributable to negligence or bad faith"); *Murray v. Mossman*, 56 Wn.2d 909, 911, 355 P.2d 985 (1960); *Evans v. Cont'l Cas. Co.*, 40 Wn.2d 614, 627-28, 245 P.2d 470 (1952); *Burnham v. Commercial Cas. Ins. Co.*, 10 Wn.2d 624, 631, 117 P.2d 644 (1941); *Besel*, 105 Wn. App. at 474; *Tyler*, 3 Wn. App. at 172-73.

[21] *See Tyler*, 3 Wn. App. at 179.

[22] *Tyler*, 3 Wn. App. at 173 (citing *Mossman*, 56 Wn.2d at 911); *see also Truck*, 76 Wn. App. at 534; 16A DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 27.1 at 162 (2d ed. 2000).

[23] *Tyler*, 3 Wn. App. at 174, 179.

[24] *Ellwein*, 142 Wn.2d at 775.

a claim, the insurer must show the reasons why it did what it did.[25] If, but only if, the insurer makes such a showing, the insured must produce evidence sufficient to support a finding that "there was *no* reasonable basis for the insurer's actions"[26]—i.e., that the insurer's reasons never existed or were so "unreasonable, frivolous, or unfounded" that a reasonable person would have considered them not "fairly debatable."[27] This is a "heavy burden,"[28] but unless the insured meets it, the insurer is entitled to summary judgment.[29]

■ Invoking the insurer's "affirmative duty" to its insured, Smith argues that the insurer in a "clear liability case"[30] must *always* comply with a third party claimant's demand for the insured's policy limits, even when the demand precedes any lawsuit.[31] Confusingly, however,

[25] *Cf. Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989) ("moving party bears the initial burden of showing the absence of an issue of material fact").

[26] *Ellwein*, 142 Wn.2d at 776.

[27] *Ellwein*, 142 Wn.2d at 775-77; *see also Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 560, 951 P.2d 1124 (1998).

[28] *Ellwein*, 142 Wn.2d at 775.

[29] *Ellwein*, 142 Wn.2d at 775-76. In a motion for reconsideration, Smith contends that *Ellwein* applies only to UIM claims, and thus that *Ellwein* does not apply here. In our view, however, *Ellwein* is to insurance claims exactly what *Baldwin v. Sisters of Providence in Washington, Inc.*, 112 Wn.2d 127, 139, 769 P.2d 298 (1989), is to employment claims. *See also Holfin v. City of Ocean Shores*, 121 Wn.2d 113, 126-27, 847 P.2d 428 (1993); *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 438, 815 P.2d 1362 (1991); *cf. Carle v. McChord Credit Union*, 65 Wn. App. 93, 105, 827 P.2d 1070 (1992) (explaining but not applying *Baldwin*). Assuming without holding that *Ellwein* does not apply when the question of fact is whether the employer did or did not perform an act, *Ellwein* clearly does apply whenever, as here, it is known that the employer performed (or refrained from performing) a *discretionary act*, and the question is whether the insurer *abused its discretion*. In the latter situation, the trier of fact must defer to the defendant's exercise of discretion, "much as an appellate court defers to a trial court's findings of fact on appeal." *Carle*, 65 Wn. App. at 105. As a result, the trier must "find for the [defendant] if the [defendant's] decision was not arbitrary, capricious or illegal; was based on facts supported by substantial evidence; and was based on facts reasonably believed by the employer to be true." *Carle*, 65 Wn. App. at 105 (*citing Baldwin*, 112 Wn.2d at 139). The question in this case is not whether Safeco did or did not disclose its policy limits, but whether it abused its discretion by not disclosing those limits. Thus, *Ellwein* applies here.

[30] *See, e.g.*, Br. of Appellant at 1. Smith offers no definition of this term, and we know of none that would suffice for all cases.

[31] Nothing in this opinion applies to disclosure of policy limits after a lawsuit is filed. That situation is controlled by CR 26(b)(2), which is not in issue here.

Smith fails to distinguish benefit to a third party claimant from benefit to the insured. Although compliance may always benefit the third party claimant, it may or may not benefit the insured, depending on the facts of the particular case—for example, compliance will *not* benefit the insured if, under the particular circumstances, it will cause the claimant to *increase* his or her settlement demand. Accordingly, the facts of the particular case should determine whether an insurer must comply with a claimant's prefiling demand for the insured's policy limits. In the absence of a statute or rule requiring disclosure,[32] and assuming that the insured does not direct otherwise,[33] the insurer must disclose the insured's policy limits if a reasonable person in the same or similar circumstances would believe that disclosure is in *the insured*'s (as opposed to the claimant's) best interests. Conversely, the insurer need not disclose if a reasonable person would believe that disclosure is not in *the insured*'s best interest, or if a reasonable person would not know, after reasonably marshalling the facts and evaluating the claim, whether disclosure was or was not in *the insured*'s best interests.

■ The facts in this case are either unknown or essentially undisputed. From the outset, Safeco knew that Bryce had rear-ended Smith and that Bryce was likely to be found liable. The record does not suggest, nor does Smith contend, that Safeco investigated the accident negligently or in bad faith. The record does not suggest, nor does Smith contend, that Smith gave Safeco any information about her injuries before she retained counsel. The record does not suggest, nor does Smith contend, that Safeco contacted Smith directly after she retained counsel.[34] The record shows that

[32] Neither party cites any statute or rule that might apply here. Nor do we know of any.

[33] We assume, though we need not hold, that an insurer must comply with an insured's express direction on whether to disclose or withhold the insured's policy limits, unless (a) the law requires otherwise, or (b) the claimant demanding such limits has a right of his or her own (as opposed to relying on the insured's right as the insured's assignee). We need not consider this matter, as Bryce gave no direction here.

[34] *See* WAC 284-30-330(19) (unfair practices in business of insurance include "[n]egotiating or settling a claim directly with any claimant known to be represented by an attorney without the attorney's knowledge and consent"); RPC 4.2.

Safeco was able to obtain very little information about Smith's injuries and no documented information about Smith's injuries, after Smith retained counsel. On February 24, 1999, a "claims specialist" from the office of Smith's counsel asserted to a Safeco adjuster, over the telephone, that Smith had a "closed head injury," "loss of memory," medical bills "close to $20k," and past and future wage loss—but when the adjuster requested documentation, Smith refused to provide it until *after* Safeco revealed Bryce's policy limits.

Based only on this record, Smith cannot show, and a rational trier of fact could not find, that Safeco's failure to disclose was so "unreasonable, frivolous, or unfounded" as not to be "fairly debatable."[35] A reasonable person in Safeco's shoes would have deemed himself or herself to lack any reliable information on the nature of Smith's injuries or the size of her claim; such a person would not have relied on undocumented information asserted over the telephone, and he or she would have had nothing else. Lacking any reliable information, a reasonable person in Safeco's shoes would not have believed that disclosure of Bryce's policy limits would serve *Bryce*'s (as opposed to Smith's) interests. On the contrary, a reasonable person in Safeco's shoes simply would not have known whether the disclosure of Bryce's policy limits would help or hurt Bryce's interests. Smith cannot show that "there was *no* reasonable basis for [Safeco's] actions,"[36] and the trial court did not err by granting summary judgment.

Hoping to forestall this conclusion, Smith relies heavily on two cases from other states. One is *Powell v. Prudential Property & Casualty Insurance Co.*,[37] and the other is *Boicourt v. Amex Assurance Co.*[38]

In *Powell*, the trial court held that a bad faith claim could not be predicated on the insurer's failure to disclose the insured's policy limits unless the claimant had made a

---

[35] *Ellwein*, 142 Wn.2d at 775-77; *see also Kirk*, 134 Wn.2d at 560.

[36] *Ellwein*, 142 Wn.2d at 776.

[37] 584 So. 2d 12 (Fla. Dist. Ct. App. 1991), *review denied*, 598 So. 2d 77 (Fla. 1992).

[38] 78 Cal. App. 4th 1390, 93 Cal. Rptr. 2d 763, *review denied*, 2000 Cal. LEXIS 5003 (2000).

formal offer to settle. The claimants not having made such an offer, the trial court granted the insurer's motion for summary judgment. Reversing, the Florida Court of Appeals held that the trial court was required to consider *all* the facts, not just one, and that all the facts warranted trial. We agree entirely. For the reasons already discussed, however, the facts of our case do not warrant trial.

In *Boicourt*, a statute barred the insurer from disclosing policy limits without the insured's permission. The insurer had a *blanket* rule never to contact its insured to seek such permission. The insurer moved for summary judgment on the ground that a bad faith claim could not be brought unless there had been a formal offer to settle. The trial court agreed and granted summary judgment. Reversing, the California Court of Appeals concluded (1) "that a formal settlement offer is *not* an absolute prerequisite to a bad faith action,"[39] and (2) "that an insurer's blanket rule against contacting the policyholder to see if the policyholder wants the policy limits disclosed *can* be a basis for bad faith."[40] We agree with the first proposition for reasons already discussed. We do not consider the second proposition because Safeco did not have a blanket rule, and also because Washington does not have a nondisclosure statute like California's. We have no quarrel with *Boicourt*, but it does not help here.

■ Smith contends that Safeco did not make a good faith effort to reach Bryce and ask her permission to disclose. We reject this contention for at least two reasons. First, an insurer need not contact an insured every time a claimant so demands; rather, an insurer must contact an insured when, under the circumstances, contact is needed to protect the insured's interests.[41] Such circumstances did not exist here, in part because Smith had not documented her injuries. Second, Smith offers nothing even tending to suggest that Bryce would have consented to disclosure if contacted before Smith filed suit.

---

[39] 93 Cal. Rptr. 2d at 768.

[40] 93 Cal. Rptr. 2d at 769.

[41] Just as the court in *Boicourt* declined to approve a rule that an insurer need not *ever* contact its insured, we decline to approve a rule that an insurer must *always* contact its insured.

Smith contends that Safeco's refusal to disclose policy limits "delayed [her] ability to evaluate and pursue a UIM claim"[42] against her own carrier, Farmers Insurance Company. Although such delay would certainly concern her, she fails to explain, and we do not perceive, why it would concern *Bryce*. Thus, it seems immaterial to a claim that is based on Bryce's rights.

■ Citing *Safeco Insurance Co. of America v. Butler*,[43] Smith states that "Washington Courts have adopted a presumption of harm *once bad faith has been established*."[44] She then concludes that the trial court erroneously failed to apply this presumption. Assuming that the presumption of harm applies to the type of bad faith claim in issue here, and not just to the type of bad faith claim at issue in *Butler*, we agree with her statement but not with her conclusion. The presumption of harm applies *after* bad faith is established,[45] and bad faith has not been established here.

■ Finally, Smith contends that Safeco acted in bad faith by forcing Smith to sue Bryce. That is a factor to be considered, but it certainly is not enough, by itself, to support a bad faith claim. If it were, an insurer could never deny an injured person's claim without being liable to its insured for bad faith. Concluding that Smith has no claim against Safeco in her own right or as Bryce's assignee, we affirm the trial court's judgment.

Affirmed.

QUINN-BRINTNALL, A.C.J., and HOUGHTON, J., concur.

After modification, further reconsideration denied October 14, 2002.

Review granted at 148 Wn.2d 1015 (2003).

---

[42] Br. of Appellant at 16.

[43] 118 Wn.2d 383; 823 P.2d 499 (1992).

[44] Br. of Appellant at 39 (emphasis added).

[45] *Butler*, 118 Wn.2d at 390 ("rebuttable presumption of harm once the insured meets the burden of establishing bad faith").